UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMICO ENTERPRISES, INC. ) | ECF CASE |
| ) | |
| and ) | |
| ) | Civil Action No. |
| BROWNSON ENTERPRISES, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| LEHIGH GAS CORPORATION ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT AND JURY DEMAND
### I.   INTRODUCTION

1.　　This civil action arises from the termination by defendant Lehigh Gas Corporation ("Lehigh") of Franchise Agreements between Lehigh and Plaintiffs in blatant disregard of Plaintiffs' rights under federal law, state law, and their contracts.  Plaintiffs are former gas station operators who had, for many years, Franchise Agreements with defendant and Mobil Oil Corporation and/or Exxon Mobil Corporation ("ExxonMobil"), defendant's predecessor in interest, to operate stations along the New York Thruway.  When it succeeded to its position as franchisor, defendant Lehigh unlawfully issued Trial Franchise Agreements ("TFA's") to these decades-long dealers, then disenfranchised these stations in violation of virtually every applicable franchise protection, including the federal Petroleum Marketing Practices Act, ("PMPA"), New York state law and even in breach of the very illegal TFA's that Lehigh had forced Plaintiffs to sign.

2.      Through Plaintiff Jimico Enterprises, Inc. ("Jimico"), which he owns, Jim Dammen has, since1988, leased and operated the gas station at the Seneca Service Center and since 2003 has leased and operated the stations at Angola Service Center (Eastbound & Westbound) pursuant to a PMPA Franchise Agreement with ExxonMobil.  Mr. Dammen operated these stations professionally and had an excellent relationship with ExxonMobil throughout.  ExxonMobil never expressed any dissatisfaction with Mr. Dammen or the way he ran his stations and always renewed the Franchise Agreement with him for these stations.

3.      From 2001 to January 2006, Peter "Mac" Brownson, acting through Plaintiff Brownson Enterprises Inc., ("Brownson"), which he owns, had leased and operated the gas station at New Baltimore Service Center pursuant to a PMPA Franchise Agreement with ExxonMobil.  Mac took over this station after his father had operated it for 28 years pursuant to a PMPA Franchise Agreement with ExxonMobil.  Both Mr. Brownson and his father operated these stations professionally and had an excellent relationship with ExxonMobil throughout.  ExxonMobil never expressed any dissatisfaction with either Mr. Brownson or the way father or son ran the station.  ExxonMobil always renewed the Franchise Agreement with each Mr. Brownson.

4.      Retail gasoline for motorists on the Thruway is supplied by a refiner or distributor which wins a contract with the Thruway.  That refiner or distributor then enters into contracts with retailers, like Plaintiffs here, to sell the gasoline to the consuming public.  The contracts between gasoline suppliers and their franchisee retailers are governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 – 2806.

5.      On information and belief, Defendant Lehigh was awarded a 10-year supply agreement by the Thruway for various service stations on the Thruway starting April 1, 2007.

From June 1, 2006 until April 1, 2007 Lehigh was operating under a separate supply agreement with the Thruway.  Starting June 1, 2006 Lehigh illegally entered into Trial Franchise Agreements with Plaintiffs herein.  Such agreements are illegal because the PMPA makes clear that TFA's are applicable to new dealers only.  Defendant Lehigh Gas terminated each of the plaintiffs less than one year after these TFA's were signed:

> Angola Eastbound:  terminated July 28, 2006
>
> Angola Westbound:  terminated July 28, 2006
>
> Seneca Service Center:  terminated April 1, 2007
>
> New Baltimore (North and South): terminated January 22, 2007

6.    Lehigh Gas terminated each Plaintiff with no notice, giving no reason and in complete violation of their federal, state and contractual rights.

7.    Plaintiffs seek damages including but not limited to: the fair market value of their stations, lost good will accumulated over years of providing excellent service, lost profits for the period each plaintiff was unlawfully deprived of its franchise, attorney fees and costs and any other remedy that the Court deems appropriate.

## II.    PARTIES

8.    Plaintiff, Jimico Enterprises, Inc, ("Jimico") is a franchisee that formerly operated gasoline dealerships (what defendant referred to as "Marketing Premises") at the New York State Thruway Westbound Seneca Area, Aldridge Road, Victor, NY  14564; the New York State Thruway Eastbound, Angola Area (Ryther), Angola, New York 14006; and the New York State Thruway Westbound, Angola Area (Inwood), Angola, New York 14006.  Jimico operated three (3) disenfranchised stations:  Seneca and Angola East and Angola West.

9.    Plaintiff, Brownson Enterprises, Inc., ("Brownson") is a franchisee that formerly

operated the gasoline dealerships (what defendant referred to as "Marketing Premises") at the New York State Thruway both Northbound and Southbound at the New Baltimore Service Area. Brownson Enterprises, Inc. has a principal place of business at 18 King Avenue, Albany, New York 12206.  Brownson operated two (2) disenfranchised stations:  New Baltimore North and New Baltimore South.

10. Defendant, Lehigh Gas Corporation is, upon information and belief, a Delaware corporation with its principal place of business at 3773 Corporate Parkway, Suite 100, Center Valley, PA  18034.

### III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter, and venue lies in this District, as follows:

(a) under The Petroleum Marketing Practices Act, 15 U.S.C. § 2805, which vests federal courts with subject matter jurisdiction over claims under the PMPA, and under the provisions establishing general federal question jurisdiction, 28 U.S.C. § 1331, and jurisdiction over claims arising under federal laws regulating commerce, 28 U.S.C. § 1337. Venue is proper in this District by operation of 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims herein arose in this District.  The Defendant is subject to personal jurisdiction in this District.

(b) Supplemental jurisdiction exists under 28 U.S.C. § 1367 over the following pendent and/or ancillary state law claims: (i) claims under New York General Business Laws sections 199-c and 349; and (ii) claims pursuant to the New York contract and common law; and

(c) This Court has jurisdiction over the above-referenced state law claims and

provisions, in the alternative, pursuant to the federal diversity statute, 28 U.S.C. § 1332. There is complete diversity between all of the Plaintiffs and the Defendant in this matter because Defendant is a Delaware company with a principal place of business in Pennsylvania and not in New York. Plaintiffs are each citizens of the State of New York and the amount in controversy exceeds $75,000.00.

## IV.   ALLEGATIONS OF FACT

12.   On June 1, 2006, Lehigh Gas Corporation ("Lehigh") began its 10 year supply contract to provide Mobil brand gasoline to certain gas stations, including Plaintiffs, on the New York Thruway. As signatory to this Thruway contract, Lehigh became the Franchisor for the retail outlets it was awarded, which also included all Plaintiffs.

13.   Even though Plaintiff Jimico had been a franchisee for 18 years and Plaintiff Brownson had been a franchisee for 26 years, Lehigh tendered them Trial Franchise Agreements ("TFA"). Each was told by Lehigh that if they refused to sign, they would no longer be dealer of record and would have to vacate the respective stations immediately. The TFA for Jimico (Angola Westbound) is attached as Exhibit A. (The TFA's for Angola Eastbound and Seneca are substantially similar and materially identical). The TFA for Brownson (New Baltimore Northbound and Southbound) is attached as Exhibit B.

14.   Under the Petroleum Marketing Practices Act ("PMPA"), a Trial Franchise Agreement is available only where, among other things, the franchisee has not previously been a party to a franchise with the franchisor.

15.   Plaintiffs here had previously been Mobil franchisees, i.e., had signed Franchise Agreements with the ExxonMobil Oil Corporation ("ExxonMobil") to sell Mobil branded gas.

5

Lehigh obtained a license from ExxonMobil in order to benefit from the sale of Mobil gas at Lehigh's franchises. Lehigh continued to sell Mobil branded gas to Plaintiffs until it terminated each of them.

16. By virtue of the license it obtained from ExxonMobil to operate as the franchisor of Mobil stations including plaintiffs, Lehigh became the successor in interest to ExxonMobil for all purposes with respect to that franchise relationship. As such, Lehigh succeeded to all of ExxonMobil's rights and obligations in the relationship with Plaintiffs, including all of ExxonMobil's rights with respect to Plaintiffs, and ExxonMobil's obligations to Plaintiffs, under the PMPA.

17. Plaintiffs' franchise agreements with ExxonMobil had three year terms which would have expired on September 30, 2006, but were terminated by Mobil once Lehigh took over the Thruway contract.

18. As the existing franchisor with respect to Plaintiffs in the period immediately prior to Lehigh's entry to that role, ExxonMobil would have been barred by the PMPA from refusing to renew Plaintiffs' franchise agreements except under circumstances not present here – such as the withdrawal of ExxonMobil sales from the relevant geographic market. No factual predicate for such non-renewal by ExxonMobil is present here. 15 U.S.C. § 2802(a).

19. By stepping into the ExxonMobil's shoes as the franchisor, Lehigh assumed the same obligations vis-à-vis Plaintiffs that had previously bound ExxonMobil. Because that is so, Lehigh was also barred by the PMPA from refusing to extend to Plaintiffs a renewed three year franchise agreement. Lehigh's proffer of a Trial Franchise Agreement, which purported to have a 120 day term, is therefore a breach of the PMPA.

20. The PMPA was designed by Congress to establish protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises. Congress enacted the PMPA because it was concerned by unequal bargaining power between franchisors and franchisees of service stations.

21. It would be completely adverse to the spirit and legislative intent of the PMPA for a franchisor to be able to sell its rights to a station and allow the new franchisor to treat the long time franchisee as a new dealer.

22. Trial Franchise Agreements are inappropriate for incumbent dealers because under a TFA, the franchisee can be terminated or non-renewed for no reason. An explicit reason for the PMPA is to prevent appropriation of hard-earned good will which occurs when a franchisor arbitrarily takes over business that franchisee has turned into a successful going concern.

23. On May 25, 2006, Lehigh called a meeting in Binghamton, New York, to discuss their new relationship with the dealers for which they would become the franchisor as of June 1, 2006. Both Jim Dammen and Mac Brownson attended that meeting. At that meeting, Lehigh told the Plaintiffs that they would be offered Trial Franchise Agreements and each dealer that refused to sign would be replaced. Lehigh told the Plaintiffs that Lehigh had no intention of converting the affected dealerships to company operated stations (which would have ousted the dealer) and that Lehigh intended a long and mutually profitable relationship with the dealers.

24. There were several Lehigh executives present at the May 25th meeting in Binghamton including: Ed Miller, Vice President of Sales and Wholesale Fuels; Lowell Brogan, Vice President of Sales and Marketing; Karen Yeakel, Vice President of Administration; Tom Caverly, Controller; Linford Bauder, Area Manager; and Barry Odor, Maintenance Supervisor.

Since the Plaintiffs were concerned about their relationship with Lehigh going forward, they asked many questions about Lehigh's intentions. Lehigh repeatedly assured the dealers that Lehigh was committed to these dealers for the long haul and that their TFA's would be renewed by full term leases upon expiration.

25.  After that meeting, and based on what the executives from Lehigh said at that meeting, each Plaintiff signed a TFA the term of which was June 1, 2006 to September 30, 2006. However, the signing of the TFA's did not create a contract because such a contract is illegal under the PMPA. The actual contract between the Plaintiffs here and Lehigh was an oral contract for a PMPA Franchise Agreement. See 15 U.S.C. § 2801(10). Lehigh never attempted to renew these TFA's nor tendered any other written contract to any of the Plaintiffs.

26.  Lehigh attempted to create a TFA with each Plaintiff in order to appropriate the hard-earned good will that Plaintiffs had cultivated over decades of hard work at their respective stations. The PMPA generally prohibits terminating a dealer. However, under a TFA, a franchisor does not need to provide any reason in order to terminate a dealer because a TFA only applies to a new dealer by definition. The relationship is a "trial" one wherein the franchise relationship can be tested.

27.  However, of the five stations and four franchise agreements at issue in this case, all but the Angola stations were left in place until a date beyond the date upon which the TFA's expired. Thus, even by the terms of those illegal agreements, the trial period ended successfully and a separate agreement was necessarily in place between Plaintiffs and defendant, governing each of these three stations. That new, separate agreement was not a trial agreement. Instead, it was an oral Franchise Agreement, which is explicitly provided for by the PMPA. See 15 U.S.C. § 2801.

28. Lehigh's right to terminate these three stations was thus totally unaffected by any provision of the TFA that had, at one time, purportedly governed the relationship between Plaintiffs and defendant. Instead, Lehigh's right to terminate these agreements is governed by the standard provisions of the PMPA governing termination of a non-trial franchise relationship. See 15 U.S.C. § 2802.

29. Once a franchise relationship is established, there are very limited circumstances wherein the franchisor can unilaterally terminate the relationship:

    a)     The dealer's Non-compliance with Franchise Agreement
    b)     The dealer's Lack of Good faith efforts
    c)     The dealer's agreement (Mutual Agreement to Terminate the Franchise)
    d)     The supplier's withdrawal from the Market Area
    e)     Other events such as criminal misconduct by dealer, bankruptcy, disability or other events not applicable here. See 15 U.S.C. § 2802 (c)(1-12).

28. In the event that Lehigh had a proper reason for termination under the PMPA, which it did not, it violated the notice requirements for termination. Under the PMPA, a franchisor is required to give a dealer notice of termination or non-renewal at least 90 days before the termination or non-renewal takes effect. Here, Lehigh gave Jimico one day of notice for his Angola stations and 3 days' notice for his Seneca station. Lehigh gave Brownson less than a day's notice when it terminated his New Baltimore location.

29. In the event that Lehigh had a proper reason for termination under the PMPA, it violated the requirement to provide written notice. To be valid, the notice must be in writing and must be sent by certified mail or personally delivered to the dealer. The notice must contain a statement of the supplier's intention to terminate the franchise or not to renew the franchise relationship, together with its reasons for its action; the notice must state the date the termination or non-renewal takes effect and the supplier must provide a simple and concise summary of the

provisions of the PMPA.  *See* 15 U.S.C. § 2804.

30.    Even if Plaintiffs were properly Trial Franchises, which they were not, Lehigh would still have been required by the terms of the TFA to provide written notice not less than 90 days before terminating or failing to renew the franchises.

31.    Where a franchise involves leased marketing premises, like each disenfranchised Plaintiff here, a franchisor may not establish a new franchise relationship involving the same premises until 30 days after notice was given to the franchisee or the date the termination or non-renewal takes effect, whichever is later.  Lehigh violated this provision of the PMPA by installing new franchisees the within a day of terminating each of the Plaintiffs here.

32.    On July 28, 2006, Lehigh unilaterally terminated Jimico's Angola stations (Eastbound and Westbound) in blatant violation of the PMPA and even their own TFA:  Lehigh provided no written notice, no reason for termination, no summary of PMPA rights when it notified Jimico that Lehigh was terminating it at Angola, Lehigh did not terminate the Angola stations in writing, Lehigh installed a new dealer the day after terminating Jimico even though the PMPA explicitly provides that "if the franchise involves leased marketing premises, your supplier may not establish a mew franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or non-renewal takes effect, whichever is later."

33.    On April 1, 2007, Lehigh unilaterally terminated Jimico's Seneca station in blatant violation of the PMPA and even their own TFA:  Lehigh provided no written notice, the verbal notice was 3 days prior to the termination, not the required 90 days, Lehigh provided no summary of PMPA rights when it notified Jimico that it was terminating the Seneca station, Lehigh installed a new dealer the day after terminating Jimico even though the PMPA explicitly

provides that "if the franchise involves leased marketing premises, your supplier may not establish a mew franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or non-renewal takes effect, whichever is later."

34. Although the purported TFA with Jimico for the Seneca station expired September 30, 2006 and was not self-renewing, Lehigh never tendered another contract to Jimico for the Seneca station. Since the TFA was illegal in the first place, Jimico always had a full PMPA Franchise Agreement. That there was not even the pretense of a written agreement from October 2006 to April 1, 2007 further supports Plaintiff Jimico's position that it was operating pursuant to a full PMPA Franchise Agreement.

35. On January 22, 2007, Lehigh unilaterally terminated Brownson's New Baltimore station. Lehigh provided no written notice, the verbal notice was the same day as the termination, not the required 90 days, Lehigh provided no summary of PMPA rights when it notified Brownson that it was terminating the New Baltimore station, Lehigh installed a new dealer the day after terminating Brownson even though the PMPA explicitly provides that "if the franchise involves leased marketing premises, your supplier may not establish a mew franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or non-renewal takes effect, whichever is later."

36. Plaintiffs' stations have a value in the marketplace and that value is available for sale. Defendant's unlawful termination of Plaintiffs' station deprived Plaintiffs of that value and defendant is liable to Plaintiffs for the value of each disenfranchised station, including the decades of developed goodwill and customer loyalty at these stations.

## V.     CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE PETROLEUM MARKETING PRACTICES ACT

37.     The Plaintiffs repeat and incorporate by reference paragraphs 1- 36 as if fully set forth herein.

38.     Plaintiffs were retailers of motor fuel in a contractual relationship with Lehigh, a distributor of motor fuel, as defined by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq*.

39.     The Petroleum Marketing Practices Act strictly regulates the requirements for a distributor of motor fuel, such as Lehigh, to terminate the franchises of dealers of motor fuel, such as Plaintiffs.

40.     By fraudulently forcing the Plaintiffs to sign Trial Franchise Agreements and by terminating Plaintiffs when no such termination is permitted by the PMPA, terminating without proper written notice, without timely notice, failing to provide Plaintiffs with a summary of their PMPA rights and installing new franchisees prior to the 30 day waiting period, Lehigh has violated Plaintiffs' rights under the Petroleum Marketing Practices Act.

41.     As a result of Defendant's violation of the Petroleum Marketing Practices Act, Plaintiffs have and continue to sustain monetary damages.

42.     As a result of Defendant's violation of the Petroleum Marketing Practices Act, Plaintiffs are entitled to, among other things, compensatory and punitive damages, together with interest, costs, and attorney's fees, for all of the above violations and the loss of value with respect to Plaintiffs' dealer franchises.

## COUNT II
## **BREACH OF CONTRACT**

43. The Plaintiffs repeat and incorporate by reference paragraphs 1- 42 as if fully set forth herein.

44. The State of New York has adopted, verbatim, the language of the Uniform Commercial Code.

45. In New York every contract contains an implied covenant of good faith and fair dealing in both the performance and enforcement of the contract. UCC § 1-203 imposes an obligation of good faith in the performance of every contract governed by the UCC. The oral Franchise Agreements, or, in the alternative, the Trial Franchise Agreements, are such a contract. UCC § 1-203; NY CLS UCC § 1-203.

46. "Good Faith" is defined as honesty in fact and the observance of reasonable commercial standards of fair dealing. UCC §§ 1-201 and 2-103; NY CLS UCC §§ 1-201 and 2-103.

47. The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract.

48. The actions taken by the defendants, including but not limited to, terminating the dealer and doing so without proper notification and without any cause or even providing written reasons all violate the implied covenant of good faith and fair dealing contained in the oral Franchise Agreements or, in the alternative, the written Trial Franchise Agreements.

49. As a result of Defendants' aforesaid breaches, Plaintiffs were damaged by Defendant's actions.

50.  Plaintiffs seek monetary damages, compensatory and punitive, together with interest, costs, and attorney's fees, for all of the above violations and the loss of value with respect to Plaintiffs' dealer franchises.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs respectfully request the following relief:

51.  That, as to Count I, this Court enter a judgment in favor of Plaintiffs and against Lehigh Gas Corporation and award Plaintiffs their actual damages (including, without limitation, lost profits and the diminution of the value of its business), exemplary damages, costs, interest, attorney's fees, expert witness' fees and all other damages recoverable under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.*

52.  That, as to Count II, this Court enter a judgment in favor of Plaintiffs and against Lehigh Gas Corporation and award Plaintiffs their actual damages (including, without limitation, lost profits and the diminution of the value of its business), exemplary damages, treble damages, costs, interest, attorney's fees, expert witness' fees and all other damages recoverable under law.

53.  That the Court grant other such further relief as it deems just and appropriate.

PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

DATED:  May 31, 2007

                Respectfully submitted,

                HINMAN, HOWARD & KATTELL, LLP

                By:  /s/ Xiaoqin Zhang

                ALBERT J. MILLUS, JR., ESQUIRE
                Federal Bar Roll No. 102210
                XIAOQIN ZHANG, ESQ.
                Federal Bar Roll No. 302584
                700 Security Mutual Building
                80 Exchange Street
                P.O. Box 5250
                Binghamton, New York 13902-5250
                Telephone: 607.723-5341
                Facsimile:  607.723-6605
                Email Address:  albert@hhk.com

                MARCUS AUERBACH & ZYLSTRA LLC
                KENDALL S. ZYLSTRA, ESQUIRE
                JEROME M. MARCUS, ESQUIRE
                P.O. Box 8876
                Elkins Park, PA 19027
                Telephone: 215.782.3300
                Facsimile:  888.875.0469
                Email Address:  zylstra@marcusauerbach.com

                ATTORNEYS FOR PLAINTIFFS