UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JIMICO ENTERPRISES, INC.; and
BROWNSON ENTERPRISES, INC.,
                    Plaintiffs,                          1:07-CV-0578
                                                        (GTS/DRH)
v.

LEHIGH GAS CORPORATION,
                    Defendant.
_____

LEHIGH GAS CORPORATION,
                    Counter-Claimant.

v.

BROWNSON ENTERPRISES, INC.; and
PETER BROWNSON,
                    Counter-Defendants,
_____

APPEARANCES:                                            OF COUNSEL:

FARUQI, FARUQI, LLP                                     RICHARD D. SCHWARTZ, ESQ.
   Counsel for Plaintiffs Jimico and Brownson Enter.   KENDALL S. ZYLSTRA, ESQ.
   and Counter-Defendant Brownson Enter.               STEPHEN E. CONNOLLY, ESQ.
369 Lexington Avenue, 10th Floor
New York, NY 10017

McNAMEE, LOCHNER TITUS & WILLIAMS, P.C.                 CHRISTOPHER MASSARONI, ESQ.
   Counsel for Plaintiffs Jimico and Brownson Enter.
   and Counter-Defendant Peter Brownson
677 Broadway
Albany, NY 12207-2503

BOND, SCHOENECK & KING, PLLC                            JOHN D. ALLEN, ESQ.
   Counsel for Defendant / Counter-Claimant            SUZANNE M. MESSER, ESQ.
One Lincoln Center
Syracuse, NY 13202-1355

HARRITON & FURRER, LLP             URS BRODERICK FURRER, ESQ.
  Counsel for Defendant / Counter-Claimant
84 Business Park Drive, Suite 302
Armonk, NY 10504

HON. GLENN T. SUDDABY, United States District Judge

<u>**MEMORANDUM DECISION and ORDER**</u>

Currently before the Court in this action brought pursuant to, *inter alia*, The Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2805, is a motion for partial summary judgment filed by Lehigh Gas Corporation ("Defendant") (Dkt. No. 42), and a cross-motion for partial summary judgment filed by Jimico Enterprises, Inc. and Brownson Enterprises, Inc. ("Plaintiffs") (Dkt. Nos. 44). For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiffs' cross-motion for summary judgment on liability regarding Defendant's improper notice is granted and a hearing on damages will be scheduled by the Court.

I.     **RELEVANT BACKGROUND**

    A.    **Plaintiffs' Claims**

Generally, liberally construed, Plaintiffs' Complaint alleges that Defendant violated the PMPA and breached the agreement that it had with Plaintiffs. More specifically, Plaintiffs allege as follows: (1) because Defendant obtained a license from ExxonMobil to operate as the franchisor of Mobil stations, including Plaintiffs, Defendant became the successor in interest to ExxonMobil for all purposes with respect to franchise relationships; (2) because Plaintiffs were existing franchisees, pursuant to their franchise relationship with ExxonMobil, it was unlawful for Defendant to "refus[e] to extend to Plaintiffs a renewed three year franchise agreement" (and instead proffer a Temporary Franchise Agreement ["TFA"]); (3) because the TFA that Plaintiffs

signed was invalid, and because Defendant made assurances to Plaintiffs "that their TFA' s would be renewed by full term leases upon expiration," it was unlawful for Defendant to terminate its franchise relationship with Plaintiffs within one year of Plaintiffs signing the TFAs; and (4) even if the TFAs were valid, and Defendant was therefore allowed to terminate its trial franchise relationship with Plaintiffs within one year of Plaintiffs signing the TFAs, Defendant did not provide Plaintiffs with the statutorily required notice before terminating its relationship with Plaintiffs. (*Id*.) Based on these allegations, Plaintiffs assert the following two claims: (1) violation of the PMPA; and (2) breach of contract.

### B.    Defendant's Counterclaims Against Brownson Enterprises, Inc., and Peter Brownson

Generally, liberally construed, Defendant's Counterclaim alleges that, on or about May 25, 2006, Plaintiff Brownson Enterprises, Inc. ("Plaintiff Brownson") and Peter Brownson, individually, signed a TFA, a Key Individual Guaranty, and a Shareholder Guaranty, in which Plaintiff Brownson promised to fully and satisfactorily perform all of its obligations under the TFA, and Peter Brownson guaranteed such performance. (Dkt. Nos. 21, 22.) The Counterclaim further alleges that, following the termination of the TFA, Plaintiff Brownson owed Defendant $89,153.27, which it has failed and refused to pay despite demands from Defendant. (*Id*.) Based on these allegations, Defendant asserts the following four claims: (1) breach of contract; (2) unjust enrichment; (3) breach of key individual guaranty; and (4) breach of shareholder guarantee. (*Id*.)

### C.    Defendant's Motion and Plaintiffs' Cross-Motion

Generally, in support of its motion for partial summary judgment, Defendant argues that, because its agreements with Plaintiffs were valid TFAs, it had the right to terminate the franchise

3

relationship under the PMPA.  (*See generally* Dkt. No. 42, Attach. 7 [Def.'s Memo. of Law].)[1]

In Plaintiffs' response to Defendant's motion for partial summary judgment (and their cross-motion for partial summary judgment), they argue as follows: (1) the doctrines of promissory, equitable, and judicial estoppel render the agreements to be long term in nature (and not TFAs); (2) Defendant fraudulently induced Plaintiffs to sign the TFAs, and therefore parole evidence of oral representations is admissible; and (3) regardless of whether the agreements were long-term agreements or TFAs, Defendant violated the notice requirements of the PMPA, which requires the Court to rule that Plaintiffs are entitled to the termination related rights of full PMPA franchises.  (*See generally* Dkt. No. 45 [Plfs.' Response Memo. of Law].)

In its reply (and response in opposition to Plaintiffs' motion), Defendant argues as follows: (1) Plaintiffs' Rule 7.1 Statement contains improper argument, fails to provide record citations, and therefore should be disregarded; (2) Plaintiffs' estoppel arguments are inapplicable; (3) Plaintiffs' fraudulent inducement argument must be disregarded because (a) Plaintiffs failed to plead fraud with specificity, and (b) Plaintiffs failed to satisfy the basic elements of fraud; (4) the PMPA provides that franchisors may terminate franchisees with less than ninety days notice, and therefore Lehigh provided Plaintiffs with sufficient notice of termination; and (5) the TFAs should not be treated as full franchise agreements based on improper notice.  (*See generally* Dkt. No. 52 [Def.'s Reply Memo. of Law].)

---

[1]     The Court notes that neither party has moved for summary judgment with regard to Plaintiffs' breach-of-contract claim.  As a result, the Court declines to consider the merits of this claim in this Decision and Order.  Furthermore, the Court notes that neither party has moved with regard to Defendant's counterclaim.  As a result, the Court declines to consider the merits of Defendant's counterclaim in this Decision and Order.  Finally, for all these reasons, the Court construes both Defendant's motion and Plaintiffs' cross-motion as ones for only *partial* summary judgment, even though they are not labeled as such.

In their reply to Defendant's opposition to their motion for partial summary judgment, Plaintiffs argue as follows: (1) Defendant has failed to raise a genuine issue of material fact regarding its violation of the notice requirements under the PMPA; (2) as a result of its violation of the notice requirements, Plaintiffs are entitled to the termination related rights of full PMPA franchises; and (3) Plaintiffs' Rule 7.1 Statement should not be disregarded.  (*See generally* Dkt. No. 54 [Plfs.' Reply Memo. of Law].)

> **D.     Undisputed Material Facts**

The following is a general summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 42, Attach. 6 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 46 [Plf.'s Rule 7.1 Response] *and* Dkt No. 52, Attach. 3.)

Defendant Lehigh is an independent distributor of branded petroleum products in several states, including New York.  Lehigh has agreements with various refineries, pursuant to which Lehigh supplies the refineries' gasoline to independent franchisees who, in turn, operate retail service stations and sell the gasoline to the public.  Exxon gasoline is one the brands that Lehigh is authorized to carry.  Lehigh has been a franchisor and distributor of gasoline to branded gas stations on the New York State Thruway (the "Thruway") since 2006.

Plaintiff Jimico is a New York corporation founded in 1988.  Jimico's president is James Dammen.  During the time of the events giving rise to this action, Jimico operated the following three gasoline service stations on the Thruway: (1) the station at the Seneca Area of the Thruway headed westbound ("Seneca Station"); (2) the station at the Angola Area of the Thruway headed eastbound ("Angola East Station"); and (3) the station at the Angola Area of the Thruway

headed westbound ("Angola West Station").[2]

Plaintiff Brownson is a New York corporation founded in 1974.  Plaintiff Brownson's president is Peter Brownson.  During the time of the events giving rise to this action, Plaintiff Brownson operated the following two gasoline service stations on the Thruway: (1) the station at the New Baltimore Area of the Thruway headed northbound ("New Baltimore North"); and (2) the station at the New Baltimore Area of the Thruway headed southbound ("New Baltimore South").[3]

In May 2006, Sunoco won a bid to assume responsibility for the numerous fuel stations on the Thruway.  However, Sunoco was subsequently unable to negotiate a contract with the relevant government agencies.  As a result, Defendant Lehigh, as the second-lowest bidder, was permitted to negotiate with the Thruway to serve as franchisor to the thirteen (13) stations that did not market Sunoco fuel.  Lehigh's contract was awarded on a temporary basis, subject to the approval of the New York State Comptroller ("the Comptroller").

Later in May 2006, Lehigh approached some of the franchisees of the thirteen (13) referenced stations, which sold Mobil-branded fuel, to obtain a commitment from them to operate as Lehigh franchisees.  When Ed Miller and Lin Bauder, representatives of Lehigh, visited with James Dammen at the Seneca Station, they told Mr. Dammen that they intended "[t]o keep the dealers on the Thruway for as long as Lehigh themselves had a contract with the Thruway."

---

[2]     Angola East and Angola West may be referred to collectively as "Angola."

[3]     New Baltimore North and New Baltimore South may be referred to collectively as "New Baltimore."

On or about May 22, 2006, Lehigh mailed Brownson and Jimico a letter inviting them to a meeting in Binghamton, New York (the "Binghamton Meeting").  The letter informed Plaintiffs that agreements they would be offered by Defendant were "Temporary Agreements" that would be "closely related" to the long-term agreements Plaintiffs had (at that time) with ExxonMobil.  The letter also stated that the Trial Franchise and Lease Agreements would be for a four-month period, which would give Lehigh and the franchisees "the opportunity to become acquainted and understand each other's business practices[, and afford Lehigh] . . . the time to prepare full term contracts."

The Binghamton Meeting was held on May 25, 2006.  The presidents of Brownson and Jimico attended the meeting.  Officials of ExxonMobil also attended, and participated in, the meeting.

At the meeting, Lehigh conducted a slide show.  One of the slides showed Lehigh's "Mission Statement," which was to "[p]rovide the highest level of customer satisfaction in the markets we serve and partner with our Dealers for long term, mutually beneficial success."  The slide show made no mention of trial agreements.

Following the slide show, Lehigh provided franchise agreements to Jimico and Brownson.  In order to remain dealers, Brownson and Jimico needed to sign the Trial Franchise and Lease Agreements by May 25, 2006.

On or about May 25, 2006, Lehigh and Jimico signed three agreements regarding the service stations at Seneca and Angola; and Lehigh and Brownson signed one franchise agreement regarding the two service stations at New Baltimore.  Before May 25, 2006, neither Jimico nor Brownson had a franchise relationship with Lehigh.

7

All of the franchise agreements that Jimico and Brownson signed are entitled, "PMPA TRIAL FRANCHISE AGREEMENTS."  Article I, Section 1.1 of each Franchise Agreement that Jimico and Brownson signed provides, in relevant part, as follows:

> PMPA Trial Franchise Relationship. By this Agreement, Lehigh Gas and Franchise Dealer establish a "Trial Franchise" and a "Franchise Relationship" as defined by the Petroleum Marketing Practices Act, 15 U.S.C. Sections 2801-2806 (the "PMPA") . . . .

Article I, Section 1.5 of the Franchise Agreements provides, in relevant part, as follows:

> Term.  The term of this Agreement shall begin on June 1, 2006, and shall continue in effect until September 30, 2006, unless terminated earlier under the provisions of this Agreement (the "Term").  Notwithstanding anything to the contrary contained herein, this Agreement may not exceed one year.  The Parties expressly agree that a term in excess of one (1) year is not intended and shall be deemed a mistake.
>
> The parties hereto mutually agree that THIS FRANCHISE IS A TRIAL FRANCHISE AND THAT THE TERM OF THIS AGREEMENT AND THE TRIAL FRANCHISE WILL EXPIRE AT THE ABOVE STATED DATE.  IT WILL NOT BE RENEWED. . . . The protections of PMPA Section 102, 15 U.S.C. § 2802 limiting the right of a franchisor to fail to renew a franchise relationship are not applicable to this relationship.

As a result of the franchise agreements that Jimico and Brownson signed with Lehigh, Lehigh became a franchisor to the New Baltimore Stations, the Seneca Station, and the Angola Stations on June 1, 2006.[4]  As franchisor on the Thruway, Lehigh controlled certain financial aspects of the Plaintiffs' businesses.  In particular, Lehigh controlled the profit margin franchisees obtained on each gallon of gas sold, as well as rent payments.

On or about July 27, 2006, Lehigh presented to James Dammen a mutual termination agreement for the Angola franchise, which he refused to sign.  (James Dammen had never

---

[4]     Before June 1, 2006, Plaintiffs operated gas stations on the Thruway as franchisees of ExxonMobil (as a result of franchise agreements previously entered into with ExxonMobil).

communicated in any manner to Lehigh that he wished to have his franchise at Angola terminated.)  On or about July 28, 2006, Lehigh ended its franchise relationship with Jimico regarding the Angola Stations.  Before the termination, Lehigh provided, and Jimico received, no written notice of the termination.  However, several hours before the termination, Jimico received oral notice of the termination.  At the time of the termination, Lehigh provided no reason for the termination, and Jimico received no compensation for the termination.

Immediately upon terminating Jimico's Angola franchise, Lehigh entered into a franchise agreement with another Lehigh dealer named Joe Klee.  Following the termination of Jimico's Angola franchise, Lehigh owed Jimico more than $35,000, which was not repaid for several months thereafter.

In or around late August of 2006, the Comptroller overruled the Thruway and awarded the distribution contract (i.e., the contract to serve as franchisor to the thirteen stations currently being serviced by Lehigh) to Sunoco.  In or around September of 2006, Lehigh filed suit in the Supreme Court of New York, Albany County, against New York State, seeking a temporary restraining order to prevent the Thruway from awarding a distribution contract to Sunoco, a competing franchisor.  In support of its motion for a temporary restraining order, Lehigh's then-president and chief executive officer, Joseph Topper, testified, on September 25, 2006, in a sworn affidavit, that Jimico and Brownson agreed to operate "fuel service facilities with the expectation that they would be entitled to continue to operate the facilities for the duration of Lehigh's lawfully executed contract with the Thruway at least ten years."  The Supreme Court of New York awarded Lehigh a temporary restraining order against the Thruway.

On or about September 28, 2006, Lehigh sent Jimico a letter indicating that it was extending the TFA for the Seneca Station; and it sent Brownson a letter indicating that it was

9

extending the TFA for the New Baltimore Stations.  On September 29, 2006, Jimico signed the letter indicating its agreement, and returned the letter to Lehigh.  On October 3, 2006, Brownson signed the letter indicating its agreement, and returned the letter to Lehigh.

Following Lehigh's successful acquisition of the temporary restraining order against the Thruway, Lehigh entered into negotiations with the Thruway and Sunoco.  Negotiations led to a settlement pursuant to which Lehigh became the long-term franchisor to the Mobil-branded stations on the Thruway including the Seneca Station and the New Baltimore Stations.  The Angola Stations, from which Jimico had been terminated in July, became supplied by Sunoco.

On or about January 22, 2007, Lehigh ended its franchise relationship with Brownson regarding the New Baltimore Stations.[5]  Before the termination, Brownson received no written notice of the termination.  Furthermore, Brownson received no compensation for the termination.  On the same day as the day on which termination occurred, Lehigh entered into a franchise agreement with another dealer.

On or about April 1, 2007, Lehigh ended its franchise relationship with Jimico regarding the Seneca Station.[6]  Before the termination, Lehigh provided, and Jimico received, no written notice of the termination.  Furthermore, Jimico received no compensation for the termination of its franchise at Seneca, and had no opportunity to sell its franchise.  Immediately upon terminating Jimico's franchise, Lehigh entered into a franchise agreement with another Lehigh dealer.

---

[5]      As early as November 17, 2006, Lehigh had decided that it was going to look for a new dealer to put in New Baltimore.

[6]      As early as February 2, 2007, it was Lehigh's "intention" to terminate Jimico's franchise at Seneca once Lehigh completed the "Sunoco transition . . . ."

Jimico and Brownson are no longer franchisees of Lehigh.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement, Rule 7.1 Response, and Rule 7.1 Reply, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id*.)

## II.   RELEVANT LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.   Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See* Dkt. No. 42, Attach. 7 [Def.'s Memo. of Law]; Dkt. No. 45 [Plf.'s Response Memo. of Law]; Dkt. No. 52 [Def.'s Reply Memo. of Law]; Dkt. No. 54 [Plfs.' Reply Memo. of Law].)

## III.   ANALYSIS OF PLAINTIFFS' CLAIMS UNDER THE PMPA

### A.   Claim of Unlawful Termination of Non-Trial Franchise Relationship

As stated above in Part I.C. of this Decision and Order, Defendant seeks the dismissal of

this claim because the agreements that it entered into with Plaintiffs were valid TFAs, and, accordingly, it had the right to terminate the franchise relationship under the PMPA when it did. In support of its argument that the parties' franchise agreements were TFAs, Defendant argues as follows: (1) the PMPA permits new franchisors to enter into TFAs with franchisees; (2) the agreement that each Plaintiff signed expressly stated that it was a TFA, and the Parol Evidence Rule precludes any effort to claim that oral representations rendered the agreement a non-TFA; and (3) even if the Court were to admit parol evidence of Plaintiffs' subjective understanding, such evidence would merely demonstrate that there was no meeting of the minds.

Based on the current record, the Court accepts Defendant's argument that the agreements that it entered into with Plaintiffs were valid TFAs, thus permitting Defendant to terminate the trial franchise relationship when it did. The Court does so for three reasons.

First, the PMPA, which exempts trial franchises from the statutory nonrenewal provisions that apply to "regular" franchise relationships,[7] requires that a "trial franchise" possess the following four characteristics: (1) it must have been "entered into on or after June 19, 1978"; (2) its "franchisee . . . [must not] previously [have] been a party to a franchise with the franchisor"; (3) its "initial term . . . [must be] for a period of not more than 1 year"; and (4) it must be "in writing and state[] clearly and conspicuously . . . (i) [the fact] that the franchise is a trial franchise[,] (ii) the duration of the initial term of the franchise[,] (iii) [the fact] that the franchisor may fail to renew the franchise relationship at the conclusion of the initial term stated in the franchise by notifying the franchisee, in accordance with the provisions of section 2804 of this title, of the franchisor's intention not to renew the franchise relationship[,] and (iv) [the fact] that the provisions of section 2802 of this title, limiting the right of a franchisor to fail to renew a

---

[7]        *See* 15 U.S.C. § 2803(a)(1).

franchise relationship, are not applicable to such trial franchise." 15 U.S.C. § 2803(b)(1).  Based on the current record, the Court concludes that, because the franchise between Plaintiffs and Defendant satisfies each of these four requirements, it was a trial franchise.[8]

Second, the Court rejects Plaintiffs' argument that Defendant, through one or more of its officials authorized to speak on behalf of the company, orally represented that the franchises were non-trial franchises, in such a way as to change the status of the franchises to non-trial franchises.  As an initial matter, pursuant to its initial agreement with the Thruway, Defendant was only guaranteed to be able to provide gasoline to thirteen stations (which included Plaintiffs) until September 30, 2006.[9]  Therefore, Defendant could not in good faith have promised Plaintiffs that their relationship would extend beyond that point.[10]  However, even assuming, for

---

[8]     The Court notes that Plaintiffs' argument that they could not be trial franchisees based on their prior franchise relationship with ExxonMobil is without merit because Defendant was not ExxonMobil's assignee, but was rather the new franchisor put into place as a result of the expiration of ExxonMobil's distribution license with the Thruway.  Moreover, the fact that Defendant may have treated Plaintiffs similar to the way that ExxonMobil treated Plaintiffs is of no significance.  *See Gutman v. Amoco Oil Co.*, 93-CV-6377, 1993 WL 597381, at *2 (S.D.N.Y. Nov. 18, 1993) (noting that "Gutman's allegations that he was 'treated by Amoco as a Dealer' are not sufficient to confer status as a party to a prior franchise agreement: 'in order to be a franchisee under the PMPA, one must enter into a contract with the franchisor relating to the sale or distribution of motor fuel' . . . [and] Gutman has not established that he signed a franchise agreement with Amoco prior to the trial franchise agreement of September 18, 1992").

[9]     This is because Defendant's contract with the Thruway was conditioned on the approval of the Comptroller.

[10]     The Court notes that, for purposes of contract interpretation, an expression of desire does not constitute a clear and unambiguous promise to perform in accordance with that desire.  *See Counsel Fin. Servs., LLC v. Melkersen Law, P.C.*, 602 F. Supp.2d 448, 452 (W.D.N.Y. 2009) (noting that "the comments by plaintiff's representatives . . . [such as] 'I like what I see,' and . . . plaintiff [i]s looking forward to a 'long and mutually beneficial relationship[,]' [constitute] [s]tatements conveying a desire to consummate or further a commercial transaction[, which] do not constitute a clear and unambiguous promise"); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp.2d 423, 444 (S.D.N.Y. 2006) ("Courts have held that, absent a distinct communication to be bound, a statement by one party to another that evinces the speaker's desire to consummate or further a commercial transaction does not

the sake of argument, that Defendant, through one or more of its officials authorized to speak on

behalf of the company, orally promised that the franchise agreements that Plaintiffs signed were

intended to be non-TFAs, such an oral promise cannot vitiate the express terms of the agreement

for the following reasons:

(1) parol evidence is not admissible to clarify the parties' rights under the TFA because

(a) the TFA is clear and unambiguous,[11] and (b) Plaintiffs failed to plead fraud in the inducement

with the requisite particularity, which is a requirement for the admissibility of the parole

evidence in question, under the circumstances;[12]

(2) Defendant's alleged oral  representations cannot authorize the Court to look outside

the contract and invoke the doctrine of equitable estoppel, because the contract unambiguously

---

constitute a clear and unambiguous promise. For example, statements such as 'we're partners' and 'we look forward to growing together,' when made by experienced negotiators in the course of a collective bargaining agreement negotiation, are not clear and unambiguous promises to renew the subject agreement."); *Marine Transport Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 636 F. Supp. 384, 391 (S.D.N.Y. 1986).

[11]     *See Gutman*, 1993 WL 597381, at *2 (noting that "Gutman's asserted reliance on representations that he would be treated as a regular franchisee does not alter the trial status of the franchise" . . . because such parol evidence "may be admitted to explain a writing only when the terms of the writing itself are ambiguous" . . . and "the contract unambiguously states that it is a trial franchise").

[12]     *See Centronics Fin. Corp. v. El Conquistador Hotel Corp.*, 573 F.2d 779, 782 (2d Cir. 1978) (noting that parol evidence is admissible when a "claim of fraud in the inducement of a contract" is "well pleaded").  Here, Plaintiff's Complaint makes only one general statement regarding fraud–"By fraudulently forcing the Plaintiffs to sign Trial Franchise Agreements and by terminating Plaintiffs when no such termination is permitted by the PMPA, terminating without proper written notice, without timely notice, failing to provide Plaintiffs with a summary of their PMPA rights and installing new franchisees prior to the 30 day waiting period, Lehigh has violated Plaintiffs' rights under the Petroleum Marketing Practices Act."  This statement fails to satisfy the particularity requirement of Fed. R. Civ. P. 9 because, among other things, there is no allegation regarding falsity of a represented material fact or scienter.  *See Wecare Holdings, LLC v. Bedminster Int'l Ltd.*, 08-CV-6213, 2009 WL 604877, at *9 (W.D.N.Y. Mar. 9, 2009) (noting that, "[i]n New York, the elements of fraudulent inducement are (1) representation of a material fact; (2) falsity of that representation; (3) scienter; (4) reliance; and (5) damages").

states that it is a trial franchise;[13]

(3) Defendant Topper's testimony (in an affidavit) in Defendant's action against New York State cannot operate to invoke the doctrine of judicial estoppel because (a) Defendant's action against the New York State settled,[14] (b) Plaintiffs were not a party to that action,[15] and (c) Mr. Topper's statement that the thirteen dealers (including Plaintiffs) "agreed to operate the thirteen fuel service facilities with the expectation that they would be entitled to continue to operate the facilities for the duration of Lehigh's lawfully executed contract with the Thruway at least ten years[,]" is not contrary to Defendant's current position; Defendant's position is simply that the parties' relationship was a trial franchise relationship, and therefore the PMPA renewal requirements are inapplicable; at the time that Mr. Topper made this statement (on or about September 25, 2006), the dealers may have expected to operate the fuel service facilities for ten years, and similarly, Defendant may have intended for the dealers to do this; however, the fact that the dealers may have expected to operate the fuel facilities for ten years does not change the fact that (1) Plaintiffs signed TFAs, which were clear and unambiguous, and (2) Defendant could not in good faith have promised to enter into an agreement with Plaintiffs for any period longer

---

[13]      *See Gutman*, 1993 WL 597381, at *2 (rejecting the plaintiff's argument that the defendant's representations "operate to invoke the doctrine of equitable estoppel," and noting that, based on "the unambiguous terms of the written contract between the parties, and Gutman's signed acknowledgment of the trial status of the franchise, Gutman's asserted reliance on representations that he would be treated as something other than a trial franchisee was unjustified and will not modify the agreement signed by the parties").

[14]      *Bates v. Long Island R.R. Co*., 997 F.2d 1028, 1038 (2d Cir. 1993) (noting that "[a] settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel"), *cert. denied*, 510 U.S. 992 (1993).

[15]      *Zedner v. United States*, 126 S.Ct. 1976, 1987 (2006) (noting that the doctrine of judicial estoppel generally estops a party who makes an argument at "one phase of a case" from "relying on a contrary argument to prevail in another phase").

than the period that Defendant was guaranteed to be a franchisor;  and

(4) Defendant's alleged oral representations cannot operate to invoke the doctrine of promissory estoppel because Plaintiffs have failed to adduce admissible record evidence establishing that Defendant's oral representations regarding the franchise relationship being a "regular" franchise relationship occurred after the TFAs were signed.  *See Washington v. Kellwood Co.*, 05-CV-10034, 2009 WL 855652, at *9 (S.D.N.Y. Mar. 24, 2009) ("Because Plaintiffs have not alleged that the License Agreement and Sales and Marketing Agreement are unenforceable contracts, a claim for promissory estoppel cannot lie for promises made before entering into those contracts. If Defendant made promises subsequent to either of these contracts, then there would remain material issues of fact as to whether Defendant's promises were, clear and unambiguous, whether Plaintiffs reasonably relied upon them, and whether that reliance resulted in unconscionable injury. Yet Plaintiffs provide only vague summaries of these "clear and unambiguous" promises, and more importantly, do not state that they were made after the formation of the Agreements.").[16]

For all of these reasons, Plaintiff's claim that their franchises were non-trial franchises that were unlawfully terminated under the PMPA is dismissed.

---

[16]     The Court notes that the only evidence introduced by Plaintiffs regarding any discussion about the parties' relationship after the initial TFAs were signed is an email sent by Defendant's representative, Lin Bauder, to Jimico's representative, James Dammen, which (1) asks Plaintiff Jimico to sign a Trial Franchise "extension", (2) indicates that Defendant has "received Sunoco's blessing . . . to remain on the [T]hruway until . . . [a]t least October 20, [2006]", and (3) indicates that Defendant "does not want to give up the [New York State Thruway] business . . . [and] plan[s] . . . to remain on the Thruway for the next 20 years."  (Dkt. No. 47, Attach. 11, at 16.)

**B.      Claim of Inadequate Notice of Termination**

As stated above in Part I.C. of this Decision and Order, Plaintiffs seek what is effectively

a declaratory judgment on the issue of inadequate notice, requesting that the Court rule that they

are entitled to the termination-related rights of full PMPA franchises as a result of Defendant's

inadequate notice of termination.  In response, Defendant argues that, because it provided

adequate notice based on the requirements of the PMPA, the TFAs should not be treated as full

franchise agreements.

In failing to renew a "trial franchise," the franchisor need not comply with the notice-of-

deficiency and opportunity-to-cure provisions set forth in 15 U.S.C. § 2802.  Instead, "the

franchisor may fail to renew the franchise relationship at the conclusion of the initial term stated

in the franchise by notifying the franchisee, in accordance with the provisions of 15 U.S.C. §

2804 . . . , of the franchisor's intention not to renew the franchise relationship."  15 U.S.C. §

2803(b)(1)(D)(iii).

The requirements for proper notice are set out in Section 2804(c), which provides that the

"[n]otification . . . shall be in writing[,] shall be posted by certified mail or personally delivered

to the franchisee[,] and shall contain . . . a statement of intention to terminate the franchise or not

to renew the franchise relationship, [t]ogether with the reasons therefor[,] . . . the date on which

such termination or nonrenewal takes effect[,] and . . . the summary statement prepared under

subsection (d)."

In addition, the notice must ordinarily be sent "not less than 90 days prior to the date on

which . . . nonrenewal takes effect." 15 U.S.C. § 2804(a)(2); *see also Shukla v. BP Exploration*

*& Oil, Inc*., 115 F.3d 849, 852 (11th Cir. 1997) (noting that "trial franchises . . . may be

nonrenewed without cause, so long as the supplier satisfies the notice requirements set forth in §

2804 . . . ") (citing 15 U.S.C. § 2803[a][1], [c][1]).  However, under extenuating circumstances, a franchisor may provide the franchisee with written notice of its intention not to renew within ninety days of the effective date of termination of the franchise.  *Shukla*, 115 F.3d at 852 (citing 15 U.S.C. § 2804).[17]

Based on the current record, the Court rejects Defendant's argument that it provided adequate notice under the PMPA for three reasons.  First, in its written notice of termination, Defendant failed to provide its reasons for termination.  *See Wojciechowski v. Amoco Oil Co.*, 483 F. Supp. 109, 113 (D. Wis. 1980) (finding that, although franchisor's notice  was timely, it was nonetheless defective "because the reasons for termination were not given").

Second, with regard to the New Baltimore and Seneca Stations, Defendant did not provide timely notice of termination.  This is because it is undisputed that Defendant did not provide even one-day written notice of termination to any of the stations operated by Plaintiffs. Moreover, with regard to potential "extenuating circumstances," the Court concludes as follows.

With regard to the Angola Stations, Defendant has failed to offer admissible record evidence from which a rational factfinder could conclude that it would not have been reasonable

---

[17]        Although 15 U.S.C. § 2804 does not define "extenuating circumstances," 15 U.S.C. § 2804(b)(1) states as follows: "[i]n circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which termination or nonrenewal takes effect, . . . such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable[] and . . . in the case of leased marketing premises, such franchisor [1] may not establish a new franchise relationship with respect to such premises before the expiration of the 30-day period which begins . . . on the date notification was posted or personally delivered, or . . . if later, on the date on which such termination or nonrenewal takes effect[,] and [2] may, if permitted to do so by the franchise agreement, repossess such premises and, in circumstances under which it would be reasonable to do so, operate such premises through employees or agents."  In addition, the Second Circuit has cautioned that "the 90-days notice ordinarily required by the PMPA should not be lightly excused."  *Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54, 60 (2d Cir. 1984).

for Defendant to furnish notice within ninety days, and that notice was offered when it was reasonably practicable.  More specifically, Defendant has offered the following evidence: (1) Jimico was having financial difficulty; (2) as a result, Jimico made a demand that Lehigh reduce the rent on the Angola Stations, and stated that, without a reduction, it would be forced to close the stations; (3) Lehigh, having already provided a rent abatement once, was unwilling to agree to a further reduction; (4) John Dammen, a Jimico employee, contacted Lehigh and indicated that Jimico wished to terminate its operation of the Angola Stations; (5) Jimico made arrangements for a new franchisee to purchase the gasoline and inventory remaining in its stations; (6) several days before the planned transfer, Lehigh sent Jimico a mutual termination agreement (which Jimico never signed); and (7) John Dammen voluntarily turned over the keys to the Angola Stations to the new franchisee.  (Dkt. No. 52, Attach. 2.)

With regard to the New Baltimore Stations, Defendant has failed to offer admissible record evidence from which a rational factfinder could conclude (a) that it would not have been reasonable for Defendant to furnish notice within ninety days, and (b) that notice was offered when it was reasonably practicable.  More specifically, Defendant has offered the following evidence: (1) in or about October 2006, Brownson unilaterally, and without notice to Lehigh, revoked Lehigh's right and ability to deposit and withdraw funds from Brownson's bank account, in violation of the TFA; (2) Lehigh approached Brownson's representative, Mac Brownson, who indicated that he would not reinstate the parties' banking relationship until Lehigh gave Brwonson an opportunity to be more profitable; (3) between October 2006 and January 2007, Brownson refused to compensate Lehigh in full for the gasoline delivered to the New Baltimore Stations; (4) because of Lehigh's contract with the Thruway, which required that Lehigh ensure that every station remain open twenty-four hours a day, seven days a week,

Lehigh could not terminate its relationship with Brownson until it had someone in place to take over the New Baltimore Stations.  (Dkt. No. 52, Attach. 2.)  While the Court acknowledges that this evidence may support a finding that the ninety day notice period would not have been reasonable, this evidence also supports a finding that more than immediate notice was "reasonably practicable."  *See Zipper v. Sun Co., Inc*., 947 F. Supp. 62, 69 (E.D.N.Y. 1996) (concluding that, where franchisee owed franchisor a disputed amount of money for a period of time, and franchisee offered to repay the money, "[franchisor] had no realistic fear that, if the franchise were not immediately terminated, substantial additional deficiencies would result," . . . and therefore, "even if [termination was permitted under the PMPA and] something less than 90 days notice would have been reasonable under the circumstances of this case, . . . an immediate notice of termination was not").

Finally, with regard to the Seneca Station, Defendant has failed to offer admissible record admissible record evidence from which a rational factfinder could conclude that it was not "reasonably practicable" for Defendant to provide written notice of termination until the day of termination.

Third, because each of Plaintiffs' stations were "leased marketing premises," as that term is defined in 15 U.S.C. § 2801, Defendant was not permitted to establish a new franchise relationship within thirty days of providing notice of termination to these Plaintiffs at these locations.  *See* 15 U.S.C. § 2804(b)(1); *Zipper*, 947 F. Supp. at 69 (noting that "[t]he [ninety-day] notice period, together with the prohibition on the establishment of new franchise relationships for at least 30 days subsequent to the issuance of a notice of termination . . . impedes terminations in a way that may cause the franchisor to accept a cure even though it is not required to, and in any event blunts the economic impact of termination on the 'Davids' of the

20

industry"). Based on the fact that, almost immediately upon terminating each Plaintiff's

franchise, Defendant entered into a franchise agreement with another dealer, the Court concludes

that Defendant violated the thirty-day prohibition on the establishment of new franchise

relationships with regard to each station.

For these reasons, the Court grants Plaintiff's motion for a declaratory judgment

regarding Defendant's liability for inadequate notice of termination.

Having so concluded, the Court reserves on the issue of damages. The Court will only

note that it rejects Plaintiffs' argument that, as a result of Defendant providing inadequate notice,

Plaintiffs are entitled to the termination-related rights of full PMPA franchises. As an initial

matter, the law that Plaintiffs cite in support of this proposition is inapposite.[18] Moreover, while

the PMPA has in place notice provisions to "blunt[] the economic impact of termination on the

'Davids' of the industry," *Zipper*, 947 F. Supp. at 69, the PMPA also clearly allows a trial

franchisor to terminate its relationship with a trial franchisee without having to satisfy the

---

[18]     Plaintiffs cite *Kaba Properties, Inc. v. Wisser Co., Inc.*, 81-CV-1660, 1981 WL 2091, at *2-3 (E.D.N.Y. May 29, 1981), where the court held simply that the franchisor's inadequate notice was "a clear violation of 15 U. S. C. § 2804, and consequently, plaintiff ha[d] shown that 'there exists sufficiently serious questions going to the merits to make such questions fair ground for litigation.'" In ruling as it did, the Court did not address, let alone conclude, that a franchisor's inadequate notice entitles dealers to full franchise rights. Plaintiffs also cite *Wojciechowski v. Amoco Oil Company*, 483 F. Supp. 109, 114 (E.D. Wisc. 1980), where the court held, *inter alia*, that "[a] franchisor [who] intentionally misleads a franchisee into signing a trial franchise," loses the "benefits of 15 U.S.C. § 2803(b)(1) . . . and [therefore] a 'trial franchise' is not created." In *Wojciechowski*, the Court enjoined the franchisor from terminating the franchise before the franchisee was evicted. In so doing, the court acknowledged that it was, "[i]n effect, . . . depriving defendant of the right to treat plaintiff as a "trial franchise." *Wojciechowski*, 483 F. Supp. at 114. However, the court noted that nonrenewal could take effect once defendant "compl[ied] with the requirements of 15 U.S.C. [§] 2802 . . . ." *Id.* (finding that "the relief accorded [wa]s [also] justified" by defendant's misrepresentation "that the law required defendant to treat plaintiff as a 'trial franchise'"). Here, Plaintiffs' request for relief comes after Plaintiffs have already been evicted. In addition, the Court has already rejected Plaintiffs' argument that they were fraudulently induced into signing the TFAs.

requirements of 15 U.S.C. § 2802.  Based on this statutory allowance, as well as principles of

economic efficiency, the Court is unwilling to convert Plaintiffs' status to that of "full PMPA

franchises" as a result of inadequate notice.

       **ACCORDINGLY**, it is

       **ORDERED** that Defendant's motion for partial summary judgment (Dkt. No. 42) is

**<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

       **ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 44) on

liability regarding Defendant's improper notice is **<u>GRANTED</u>**, and it is further

       **ORDERED** that counsel are directed to appear on **SEPTEMBER 23, 2010 at 9:00 a.m.**

for a hearing on damages before the Honorable Glenn T. Suddaby in Syracuse, New York.

Plaintiffs are further directed to forward a written settlement demand to defendant no later than

AUGUST 24, 2010, and the parties are directed to engage in meaningful settlement negotiations

prior to the 9/23/10 hearing.

Dated: July 27, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge