UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JIMICO ENTERPRISES, INC.; and
BROWNSON ENTERPRISES, INC.,
                  Plaintiffs,                    1:07-CV-0578
                                          (GTS/DRH)

v.

LEHIGH GAS CORPORATION,
                  Defendant.
_____

LEHIGH GAS CORPORATION,
                  Counter-Claimant,

v.

BROWNSON ENTERPRISES, INC.; and
PETER BROWNSON,
                  Counter-Defendants.
_____

APPEARANCES:                                OF COUNSEL:

FARUQI, FARUQI, LLP                    RICHARD D. SCHWARTZ, ESQ.
  Counsel for Plaintiffs Jimico and Brownson Enter.      KENDALL S. ZYLSTRA, ESQ.
  and Counter-Defendant Brownson Enter.
369 Lexington Avenue, 10th Floor
New York, NY 10017

McNAMEE, LOCHNER TITUS & WILLIAMS, P.C.    CHRISTOPHER MASSARONI, ESQ.
  Counsel for Plaintiffs Jimico and Brownson Enter.
  and Counter-Defendant Peter Brownson
677 Broadway
Albany, NY 12207-2503

HARRITON & FURRER, LLP               URS BRODERICK FURRER, ESQ.
  Counsel for Defendant / Counter-Claimant
84 Business Park Drive, Suite 302
Armonk, NY 10504

HON. GLENN T. SUDDABY, United States District Judge

<u>**MEMORANDUM-DECISION and ORDER**</u>

Currently before the Court in this action brought by Jimico Enterprises, Inc., and Brownson Enterprises, Inc. ("Plaintiffs") against Lehigh Gas Corporation ("Lehigh") pursuant to, *inter alia*, the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2805, are the following: (1) Plaintiffs' motion for attorney's fees and expert fees (Dkt. No. 84); (2) Plaintiffs' motion for costs (Dkt. No. 85); (3) Plaintiffs' motion for pre- and post-judgment interest (Dkt. No. 97); (4) Plaintiffs' motion for entry of final judgment, pursuant to Fed. R. Civ. P. 54(b) (Dkt. No. 104); (5) Lehigh's motion for a stay of entry of final judgment, pursuant to Fed. R. Civ. P. 62(d) (Dkt. No. 105); and (6) Lehigh's motion for summary judgment on its counterclaims (Dkt. No. 114). For the reasons set forth below, Plaintiffs' motion for attorney's fees and expert fees is granted in part and denied in part; Plaintiffs' motion for costs is granted in part and denied in part; Plaintiffs' motion for pre- and post-judgment interest is granted in part and denied in part; Plaintiffs' motion for entry of final judgment, pursuant to Fed. R. Civ. P. 54(b) is denied; Lehigh's cross-motion for a stay of entry of final judgment, pursuant to Fed. R. Civ. P. 62(d), is denied; and Lehigh's motion for summary judgment on its counterclaims is granted in part and denied in part.

I.      **RELEVANT BACKGROUND**

        A.      **Plaintiffs' Claims**

        Generally, liberally construed, Plaintiffs' Complaint alleges that Defendant violated the PMPA and breached the agreement that it had with Plaintiffs. More specifically, Plaintiffs allege as follows: (1) because Defendant obtained a license from ExxonMobil to operate as the franchisor of Mobil stations, including Plaintiffs, Defendant became the successor in interest to

ExxonMobil for all purposes with respect to franchise relationships; (2) because Plaintiffs were existing franchisees, pursuant to their franchise relationship with ExxonMobil, it was unlawful for Defendant to "refus[e] to extend to Plaintiffs a renewed three year franchise agreement" (and instead proffer a Temporary Franchise Agreement ["TFA"]); (3) because the TFA that Plaintiffs signed was invalid, and because Defendant made assurances to Plaintiffs "that their TFA' s would be renewed by full term leases upon expiration," it was unlawful for Defendant to terminate its franchise relationship with Plaintiffs within one year of Plaintiffs signing the TFAs; and (4) even if the TFAs were valid, and Defendant was therefore allowed to terminate its trial franchise relationship with Plaintiffs within one year of Plaintiffs signing the TFAs, Defendant did not provide Plaintiffs with the statutorily required notice before terminating its relationship with Plaintiffs. (Id.) Based on these allegations, Plaintiffs assert the following two claims: (1) violation of the PMPA; and (2) breach of contract.

For the sake of brevity, the Court will not describe in detail, the Court's rulings with regard to these claims.  (Dkt. No. 68, 82.)  Rather, the Court will only note that, on October 14, 2010, this Court issued a Decision and Order awarded Plaintiffs a total of $141,892.79 in compensatory damages, and a total of $30,000.00 in punitive damages, on their claims arising under the PMPA.  (Dkt. No. 82.)[1]

---

[1]       The Court notes that the award broke down as follows: (1) Plaintiff Jimico Enterprises, Inc., was awarded $120,461.38 ($41,977.00 in lost income at the Angola Station, plus $20,583.00 in lost income at the Seneca Station, plus $16,632.50 in lost profits regarding a sale of the Angola Station, plus $21,268.88 in lost profits regarding a sale of the Seneca Station, plus $10,000.00 in punitive damages regarding the Angola Station, plus $10,000.00 in punitive damages regarding the Seneca Station); and (2) Plaintiff Brownson Enterprises, Inc., was awarded a total of $ 51,431.38 ($19,123 in lost income at the New Baltimore Station, plus $22,308.38 in lost profits regarding a sale of the New Baltimore Station, plus $10,000.00 in punitive damages regarding the New Baltimore Station).

**B.      Defendant's Counterclaims Against Brownson Enterprises, Inc., and Peter Brownson**

Generally, liberally construed, Lehigh's Counterclaim alleges that, on or about May 25, 2006, Brownson Enterprises, Inc. and Peter Brownson (hereinafter "the Brownson Defendants") individually, signed a TFA, a Key Individual Guaranty, and a Shareholder Guaranty, in which Brownson Enterprises promised to fully and satisfactorily perform all of its obligations under the TFA, and Peter Brownson guaranteed such performance. (Dkt. Nos. 21, 22.)  The Counterclaim further alleges that, following the termination of the TFA, Brownson Enterprises owed Lehigh $89,153.27, which it has failed and refused to pay despite demands from Lehigh. (*Id*.) Based on these allegations, Lehigh asserts the following four claims: (1) breach of contract; (2) unjust enrichment; (3) breach of key individual guaranty; and (4) breach of shareholder guarantee.  (*Id*.)

**C.      Parties' Motions**

**1.      Plaintiffs' Motion for Attorney's Fees and Expert Fees**

Generally, in support of their motion for attorney's fees and expert fees, Plaintiffs argue as follows: (1) their request is timely; (2) fee requests are typically granted pursuant to federal remedial statutes; and (3) their fee requests are reasonable.  (Dkt. No. 84, Attach. 6.)

Generally, in its response, Lehigh argues that Plaintiffs are not entitled to attorney's fees and expert fees because (1) Plaintiffs were not a "prevailing party" given that they "failed" on one of their claims, (2) Plaintiffs' attorneys failed to provide the Court and Defendant with a copy of their contingency agreement with Plaintiffs, (3) there is insufficient information in the

billing sheets to enable the Court to determine whether the hours billed are reasonable, and (4) the time billed is excessive and unreasonable.  (Dkt. No. 90, Attach. 10.)  In addition, Lehigh argues that, in the event the Court determines that Plaintiffs satisfy the definition of "prevailing party," and that neither the billing information nor the absent contingency fee agreement is fatal to the request, Plaintiffs should be required to "remove[] all . . . [fees] incurred in connection with Plaintiffs' failed claim . . . and a hearing should be scheduled during which Lehigh may examine Plaintiffs' counsel regarding their fees and costs."  (*Id.*)

Generally, in their reply, Plaintiffs essentially reiterate previously advanced arguments. (Dkt. No. 99.)[2]

### 2.    Plaintiffs' Motion for Costs

In their motion for costs, Plaintiffs request costs based on the fact that they were awarded compensatory and punitive damages on one of their claims.  (Dkt. No. 85, Attach. 1.)  Among other things, Plaintiffs request reimbursement for (1) witness fees, (2) copying expenses, and (3) food and travel expenses.  (*Id.*)

Generally, in its response, Lehigh argues that Plaintiffs are not entitled to costs for "multiple hotel bills for meetings with clients when one attorney could have met the clients, steak and lobster dinners, cocktails, expensive wine and after dinner drinks[,]" and that, because Plaintiffs have submitted requested costs for these items, Plaintiffs' entire request for costs should be denied.  (Dkt. No. 90, Attach. 10.)

_____

[2]      Although Plaintiffs' motion is non-dispositive, Plaintiffs were permitted to file a reply on that motion.

5

In response, Plaintiffs argue that their request for costs is reasonable, and, even if the Court finds that some costs are unreasonable, the reasonable costs should still be awarded.  (Dkt. No. 99.)

### 3.    Plaintiffs' Motion for Pre- and Post-Judgment Interest

In their motion for interest, Plaintiffs argue that they are entitled to (1) pre-judgment interest to put Plaintiffs in the position they would have been in had they been paid immediately, and (2) post-judgment interest to compensate them for the delay in payment that they suffer from the time damages are reduced to an enforceable judgment to the time Lehigh pays the judgment. (Dkt. No. 97, Attach. 1.)

Lehigh did not specifically oppose these arguments.  (*See generally* Docket Sheet.) Instead, it characterized Plaintiffs' motion as "premature" and "unnecessary" because "Lehigh would have consented to that application."  (Dkt. No. 105, Attach. 1, at ¶¶ 12-14.)

### 4.    Plaintiffs' Motion for Entry of Final Judgment and Lehigh's Motion for a Stay of Entry of Final Judgment

Generally, Plaintiffs argue that a final judgment should be entered for Plaintiff Jimico Enterprises, Inc. ("Jimico"), pursuant to Fed. R. Civ. P. 54(b), and that a final judgment should be entered for Plaintiff Brownson Enterprises, Inc. ("Brownson Enterprises") on its PMPA claims, pursuant to Fed. R. Civ. P. 54(b), despite the fact that Lehigh has an outstanding counterclaim against it.  (Dkt. No. 104.)

Generally, in its response, Lehigh argues that Plaintiffs' motion should be denied because outstanding issues remain in this action regarding (1) Plaintiffs' motion for attorney's fees and expert fees, (2) Plaintiffs' motion for pre- and post-judgment interest, and (3) Lehigh's counterclaims against Brownson Enterprises and Peter Brownson.  (Dkt. No. 105, Attach. 2.)

Lehigh further argues that, in the event the Court decides to grant Plaintiffs' motion, the Court should grant Lehigh's cross-motion for an order staying enforcement of the judgment pending a decision on appeal, and approve Lehigh's supersedeas bond in an amount totaling $191,051.00. (*Id.*)

Generally, in their reply, Plaintiffs argue that their motion should be granted because their PMPA claims satisfy the requirements for judgment under Fed. R. Civ. P. 54(b) (i.e., multiple claims and parties are present, Plaintiffs' PMPA claims have been finally decided, and the three outstanding issues identified by Lehigh do not create any just reason to delay entry of judgment on Plaintiffs' PMPA claims).  (Dkt. No. 106.)  In addition, Plaintiffs argue that Lehigh's cross-motion should be denied because (1) a stay may not be granted under Fed. R. Civ. P. 62(d) when the appeal is of an interlocutory order, and (2) Lehigh's proposed supersedeas bond is inadequate because it does not account for an award of pre-judgment interest, attorney's fees, or costs on appeal.  (*Id.*)

### 5.    Lehigh's Motion for Summary Judgment

Generally, in support of its motion for summary judgment on its breach-of-contract and unjust enrichment counterclaims against the Brownson Defendants, Lehigh argues as follows: (1) based on the admissible record evidence, a rational factfinder could conclude only that Brownson Enterprises violated the Trial Franchise Agreement ("TFA") between Lehigh and Brownson Enterprises by "unilaterally terminating [Lehigh's] right to withdraw funds to pay for gasoline deliveries[,] . . . refusing to compensate [Lehigh] in any other way in full for petroleum products delivered to [Brownson Enterprises'] New Baltimore Stations[,]" and "fail[ing] to make payments for gasoline when due"; (2) based on the admissible record evidence, a rational

7

factfinder could conclude only that "the outstanding balance for petroleum products supplied and

delivered by [Lehigh] to Brownson [Enterprises] . . . was $84,889.72"; (3) based on the

admissible record evidence, a rational factfinder could conclude only that Brownson Enterprises

has been unjustly enriched by not having to pay for this gasoline, from which they profited

through sales to consumers; (4) based on the admissible record evidence, a rational factfinder

could conclude only that Brownson Enterprises' defenses for not paying their outstanding

balance are without merit; (5) based on the admissible record evidence, a rational factfinder

could conclude only that, as the personal guarantor of Brownson Enterprises, Peter Brownson is

liable for Lehigh's counterclaims against Brownson Enterprises; and (6) based on the admissible

record evidence, a rational factfinder could conclude only that Lehigh is entitled to attorney's

fees pursuant to the TFA.  (Dkt. No. 114.)

Generally, in their response, the Brownson Defendants argue as follows: (1) Lehigh's

motion for summary judgment on its breach-of-contract claim should be denied because (a)

disputed issues of material fact exist regarding the adequacy of Lehigh's performance, (b)

disputed issues of material fact exist regarding Brownson Enterprises' alleged breach, and (c)

disputed issues of material fact exist regarding Lehigh's damages; (2) Lehigh's motion for

summary judgment on its unjust enrichment claim should be denied because the existence of a

valid and enforceable contract precludes recovery under this theory of liability; (3) Lehigh's

request for attorney's fees should be denied because (a) Lehigh is not entitled to summary

judgment on any of its claims, (b) they cannot be compelled to perform under the TFA (and pay

attorney's fees) because Lehigh substantially failed to perform its side of the bargain, and (c) the

request is barred by the PMPA; and (4) Lehigh's motion for summary judgment on its claims

against Peter Brownson as a personal guarantor should be denied because (a) Lehigh is not

entitled to summary judgment on any of its claims, and (b) the personal guarantees included in

the TFA are unconscionable, and therefore unenforceable.  (Dkt. No. 115.)

Generally, in its reply, in addition to reiterating previously advanced arguments, Lehigh

argues as follows: (1) because the Brownson Defendants failed to provide record citations in

support of their denials of the material facts asserted by Lehigh, those material facts should be

deemed admitted under Local Rule 7.1(a)(3); (2) the Brownson Defendants failed to adduce

admissible record evidence from which a rational factfinder could conclude that Lehigh did not

fully perform under the TFA by delivering all petroleum products required of it to Brownson

Enterprises; (3) there is "no correlation between the termination [of the TFA] and Brownson

Enterprises' breach[,] other than that the breach was the driving reason behind the termination";

(4) the Brownson Defendants have failed to adduce admissible record evidence from which a

rational factfinder could conclude that they did not breach the TFA; (5) the Brownson

Defendants have failed to adduce admissible record evidence from which a rational factfinder

could conclude that Lehigh did not suffer damages as a result of their breach of the TFA; (6) in

the event the Court invalidates the TFA, Lehigh's claim of unjust enrichment must be

considered; (7) the personal guarantees set forth in the TFA are not unconscionable; and (8) the

PMPA does not prohibit Lehigh from recovering attorney's fees incurred as a result of

prosecuting its contractual rights.  (Dkt. No. 116.)

### D.   Undisputed Material Facts

The Court incorporates by reference the undisputed material facts set forth in the Court's

Decision and Order of July 27, 2010.  (Dkt. No. 68, at 5-11.)  Generally, the *additional*

undisputed material facts of this case are as follows.  (Dkt. No. 114, Attach. 3 [Lehigh's Rule 7.1

Statement]; Dkt. No. 115, Attach. 1 [Brownson Defs.' Rule 7.1 Response and Counter-Statement]; Dkt. No. 116 [Lehigh's Rule 7.1 Response].)

On or about May 25, 2006, Lehigh and Brownson Enterprises entered into PMPA Trial Franchise Agreement ("TFA") for the New Baltimore Stations.  The TFA provided that Brownson Enterprises was obligated to pay for all petroleum products sold pursuant to the TFA, before delivery, and that it was within Lehigh's discretion whether to extend Brownson Enterprises credit for petroleum products that Brownson Enterprises purchased.  In addition, the TFA and subsequent extension thereto included a provision by which Brownson Enterprises agreed to open and maintain a bank account, which would allow Lehigh to deposit and withdraw sums of money in connection with gasoline delivered to Brownson Enterprises.

In or about October 2006, Brownson Enterprises unilaterally and without notice to Lehigh revoked Lehigh's right and ability to deposit and withdraw funds from Brownson Enterprises' bank account.  Linford Bauer, Jr., who was the territory manager for Lehigh, contacted Peter Brownson about this matter.  Peter Brownson advised Bauder that he would not reinstate Lehigh's right to withdraw funds for gasoline deliveries unless and until Lehigh provided him with an opportunity to be more profitable.

Brownson Enterprises remained in arrears to Lehigh from October 2006 through January 2007.  On January 22, 2007, Lehigh notified Brownson Enterprises that it was terminating the franchise relationship effective January 24, 2007.  Following the termination, the outstanding balance for the petroleum products supplied and delivered by Lehigh to Brownson Enterprises for the New Baltimore Stations was $84,889.72.

## II.      RELEVANT LEGAL STANDARDS

### A.      Legal Standard Governing Motions for Attorney's Fees, Expert Witness Fees, and Costs

Pursuant to the PMPA, reasonable attorney's fees and expert witness fees are mandatory when a franchisee"prevails" in its action against a franchisor.  15 U.S.C. § 2805(d)(1)(C).  A franchisee "prevails" in its action when it "recovers more than nominal damages."  *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*, 130 S.Ct. 1251, 1260 n.7 (2010) ("The [PMPA] requires courts to award attorney's fees and expert-witness fees in any case in which a [franchisee] recovers more than nominal damages.").  To demonstrate that a fee request is reasonable, "a party seeking an attorney's fees award 'must support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done.'"  *Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp.*, 06-CV-0617, 2007 WL 841804, at *6 (E.D.N.Y. Jan. 16 2007) (quoting *Cablevision Sys. New York City Corp. v. Diaz*, 01-CV-4340, 2002 WL 31045855, at *5 [S.D.N.Y. July 10, 2002]).  Finally, with regard to costs, a court will generally award "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *see also United States for Use and Benefit of Evergreen Pipeline Const. Co. v. Merritt-Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (denying recovery for lack of documentation of what was copied and the number of copies made); *LV v. New York City Dept. of Educ.*, 700 F. Supp.2d 510, 528 (S.D.N.Y. 2010) ("[M]eals and hand deliveries are not compensable.").

**B.      Legal Standard Governing Motions for Pre- and Post-Judgment Interest**

In their (unopposed) motion for pre- and post-judgment interest, Plaintiffs accurately recite the legal standard governing that motion.  (Dkt. No. 97, Attach. 1.)  As a result, in the interest of brevity, the Court will incorporate that recitation in this Decision and Order, which is intended primarily for the review of the parties.

**C.      Legal Standard Governing Motions for Entry of Final Judgment and Motions for a Stay of Entry of Final Judgment**

Rule 54(b) of the Federal Rules of Civil Procedure provides that "[w]hen more than one claim for relief is presented in an action . . . or when multiple parties are involved, the [district] court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . ."  Once certified under Fed. R. Civ. P. 54(b), "the parties to the action may seek an immediate appeal without waiting for the remaining issues in the case to be decided."  *Byrne v. Telesector Res. Group, Inc*., 04-CV-0076, 2007 WL 2403721, at *1 (W.D.N.Y. Aug. 20, 2007).

"[A] party [properly] taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d)." *Am. Manufs. Mutual Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc*., 87 S.Ct. 1, 3 (1966) (Harlan, J., in chambers).  The supersedeas bond filed in connection with stay pending appeal is usually for the full amount of the judgment, though the district court has discretion in setting the amount.  *Frankel v. ICD Holdings S.A*., 168 F.R.D. 19, 22 (S.D.N.Y. 1996); *Nippon Emo-Trans Co., Ltd. v. Emo-Trans, Inc*., 744 F. Supp. 1215, 1236-37 (E.D.N.Y. 1990); *Matthews v. CTI Container Transport Intern. Inc*., 689 F. Supp. 348, 349-50 (S.D.N.Y. 1988).

**D.      Legal Standard Governing Motions for Summary Judgment**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

## III.      ANALYSIS

**A.      Lehigh's Motion for Summary Judgment**

**1.      Counterclaim for Breach of Contract**

As stated above in Part I.B.5. of this Decision and Order, Lehigh seeks summary judgment on its breach-of-contract counterclaim against the Brownson Defendants because (1) based on the admissible record evidence, a rational factfinder could conclude only that Brownson Enterprises violated the TFA by "unilaterally terminating [Lehigh's] right to withdraw funds to pay for gasoline deliveries[,] . . . refusing to compensate [Lehigh] in any other way in full for petroleum products delivered to [Brownson Enterprises'] New Baltimore Stations[,]" and "fail[ing] to make payments for gasoline when due."  Based on the current record, the Court agrees.

As an initial matter, the parties do not dispute that New York law governs Lehigh's breach-of-contract claim.  As a result, the Court will apply New York contract law in analyzing Lehigh's claim.

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Freidman v. Gen. Motors Corp.*, 721 F. Supp.2d 218, 224-25 (S.D.N.Y. 2010) (quoting *First*

13

*Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) [internal quotations and citations omitted]).  "If a contract is unambiguous, its interpretation is a question of law and summary judgment is appropriate."  *House of Diamonds v. Borgioni, LLC*, 737 F. Supp.2d 162, 170 (S.D.N.Y. 2010).

In its Decision and Order of July 27, 2010, the Court found that the agreement that Lehigh entered into with Brownson Enterprises was a valid TFA.  It is undisputed that, pursuant to the TFA, Lehigh agreed to provide Brownson Enterprises with petroleum products, and Brownson Enterprises agreed to pay for these products.  It is also undisputed that Lehigh provided Brownson Enterprises with petroleum products between October 2006 and January 2007, in the amount of $84,889.72, and that Brownson Enterprises accepted, but did not pay for, these products.

In addition, the Court rejects the Brownson Defendants' argument that there is a genuine issue of material fact regarding the issue of performance.  "It is true that a party that seeks to recover damages from another party for breach of contract must show that it itself is free from fault in respect to performance."[3]  However, the Brownson Defendants have failed to adduce admissible record evidence from which a rational factfinder could conclude that Lehigh failed to perform its promise to supply Brownson Enterprises with petroleum.  Rather, the Brownson Defendants argue, *inter alia*, that Lehigh's inadequate notice of termination establishes non-performance.  However, the fact that Lehigh did not give Brownson Enterprises adequate notice of termination, in violation of the PMPA, is entirely unrelated to Brownson Enterprises' failure to pay Lehigh for services rendered.  In other words, the protections set forth in the PMPA, which prevent a franchisor from terminating a franchisee without adequate notice, do not give

---

[3]        *Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*, 983 F. Supp. 403, 424 (S.D.N.Y. 1997)

rise to an exception for non-payment of goods.

Furthermore, the Court rejects the Brownson Defendants' argument that there is a genuine issue of material fact regarding the issue of breach because Brownson Enterprises was terminated before it had the opportunity to raise the funds needed to pay Lehigh.  The "doctrine of prevention" provides that "a party to a contract cannot rely on the failure of another to perform when he has frustrated or prevented performance."  *Hidden Meadows Dev. Co. v. Parmelee's Forest Prods., Inc*., 289 A.D.2d 642, 644 (N.Y. App. Div., 3d Dept. 2001).  The fact that Lehigh terminated the TFA with Brownson Enterprises *because* Brownson Enterprises failed to pay for petroleum products that it had accepted for approximately four months cannot logically support an argument that Lehigh *prevented* Brownson Enterprises from paying for those petroleum products during that four month period by subsequently terminating the franchise relationship.  Moreover, even if the Brownson Defendants are arguing merely that Lehigh's termination prevented them from paying for the petroleum products in question after the termination, such an argument fails.  To conclude otherwise would amount to a finding that Brownson Enterprises did not have the right to terminate the TFA for non-payment of goods at any point.

Finally, for the reasons stated by Lehigh in its memorandum of law and reply memorandum of law, the Court rejects the Brownson Defendants' conclusory argument that Lehigh did not suffer damages (apparently because it profited from its relationship with Brownson Enterprises).

For these reasons, the Court grants Lehigh's motion for summary judgment on its breach-of-contract claim against Brownson Enterprises.  In addition, because the Court has already concluded that the TFA is a valid and enforceable agreement, and for the reasons stated by

Lehigh in its reply memorandum of law, the Court rejects Brownson Defendants' argument that the personal guaranty set forth in the TFA is unenforceable.  As a result, Peter Brownson is liable, as the personal guarantor for Brownson Enterprises, for Brownson Enterprises' breach of contract.

### 2.      Counterclaim for Unjust Enrichment

The Court has already concluded that a valid and enforceable contract exists between Lehigh and Brownson Enterprises.  As a result, the Court denies Lehigh's motion for summary judgment on its unjust enrichment claim, which is dismissed.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (N.Y. 2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.").

### 3.      Counterclaim for Attorney's Fees

As stated above in Part I.B.5. of this Decision and Order, Lehigh seeks attorney's fees pursuant to the TFA.  Generally, in their response, the Brownson Defendants argue that Lehigh's request for attorney's fees should be denied because (1) Lehigh substantially failed to perform its side of the bargain, and thus the Brownson Defendants cannot be compelled to perform under the TFA (and pay attorney's fees), and (2) the request is barred by the PMPA.

For the reasons stated above in Part III.A.1. of this Decision and Order, the Court rejects the Brownson Defendants' first argument: the Brownson Defendants have failed to adduce admissible record evidence from which a rational factfinder could conclude that Lehigh failed to perform its side of the bargain.  In addition, the Court rejects the Brownson Defendants' second argument, specifically its argument that the PMPA somehow precludes Lehigh from recovering attorney's fees under the TFA.  In its Decision and Order of July 27, 2010, the Court rejected

Lehigh's argument that, because it could "contract around" the PMPA's attorney's fee provision, Plaintiffs were not entitled to attorney's fees under the TFA.  The Brownson Defendants now seek to use this statement to establish that Lehigh cannot recover attorney's fees because the PMPA does not allow such a recovery for a franchisor.  However, the fact that the PMPA confers upon a franchisor the absolute right to recover attorney's fees from a franchisee when the action, brought by the franchisee, is frivolous,[4] does not somehow preclude a franchisor from also recovering attorney's fees, provided for in a contract, based on a franchisee's breach of that contract.  *See Thelen Oil Co., Inc. v. Fina Oil & Chem. Co.*, 962 F.2d 821, 824 (8th Cir. 1992) (permitting franchisor to recover attorney's fees for franchisee's breach of lease agreement because "[t]he PMPA's attorney fees provision does not cover actions brought outside the PMPA").  Having said that, to the extent Lehigh seeks to recover attorney's fees for the cost of defending itself against Plaintiffs' PMPA claims, the request is denied for the reasons set forth in the Decision and Order of July 27, 2010.  *See also Thelen Oil Co., Inc.*, 962 F.2d at 824 (noting that, although franchisor may recover attorney's fees for franchisee's breach of lease agreement, to the extent franchisor attempted to use attorney fee provisions of lease to obtain attorney's fees for costs of defending against franchisee's PMPA claim, the provisions in the lease were preempted by the PMPA).

As a result, Lehigh's request for attorney's fees arising from the Brownson Defendants' breach of the TFA is granted.

### 4.    Set-Off

In its Decision and Order of October 14, 2010, the Court awarded Plaintiff Brownson a total of $51,431.38 ($19,123.00 in lost income at the New Baltimore Station, plus $22,308.38 in

---

[4]         *See* 15 U.S.C.A. § 2805(d)(3).

lost profits regarding a sale of the New Baltimore Station, plus $10,000.00 in punitive damages regarding the New Baltimore Station).  In this Decision and Order, the Court awards Lehigh $84,889.72.

In addition, Lehigh's damages for Plaintiff Brownson's breach occurred, at the very latest, when Lehigh terminated the franchise relationship with the New Baltimore Stations (i.e., at the same time that Plaintiff Brownson's damages occurred).  As a result, the Court offsets Plaintiff Brownson's award by Lehigh's award, with the result being that the Brownson Defendants owe Lehigh $33,458.34.[5]

**B.      Plaintiffs' Motion for Attorney's Fees, Expert Witness Fees, and Costs**

**1.      Attorneys' Fees**

As stated above in Parts I.B.1. and I.B.2. of this Decision and Order, Plaintiffs seek attorney's fees because they prevailed on their inadequate-notice claim under the PMPA.  As an initial matter, the Court finds that Plaintiffs satisfy the definition of "prevailing party" because they prevailed on one of their PMPA claims, which resulted in a substantial monetary award.  *Cf. Murarese v. Amoco Oil Co.*, 648 F. Supp. 347, 348-50 (E.D. Pa. 1986) (finding that former franchisee "prevailed" on PMPA claim, and thus satisfied threshold inquiry of statute entitling him to attorney's fees, despite receiving only nominal damages and prevailing on only one of three claims).

Having said that, the Court declines to apply a blended rate of $375 for the out-of-district partner and $250 for the out-of-district associate, because the Court is not convinced that, under the circumstances, "a reasonable client . . . selected [the] out-of-district counsel because doing so [was] likely . . . [to] produce a substantially better net result."  *Simmons v. N.Y. City Transit*

---

[5]      The Court calculates this amount as follows: $84,889.72 minus $51,431.38 equals $33,458.34.

*Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  The Court acknowledges Plaintiffs' argument that they

chose counsel because they were unable to locate an attorney in this district who was both

familiar with the PMPA and willing to pursue Plaintiffs' claims.  (Dkt. No. 84, Attach. 6, at 14.)

However, the Court is not persuaded that it was Plaintiffs' counsel's "specialized expertise" that

helped Plaintiffs secure their award.  To the contrary, the issue of inadequate notice was

relatively straightforward, and the calculation of damages was arrived at through the Court's

independent review of the record evidence.  Finally, because Plaintiffs' counsel took the case on

a contingency fee basis, it is not clear to the Court that even Plaintiffs would have paid the out-

of-district partners' rate of $645 per hour (such that applying a *blend* of the out-of-district and

in-district rates would be appropriate).

　　　　In addition, the Court rejects Plaintiffs' in-district counsel's hourly rate of $325 as

unreasonable.  In determining what is reasonable, the following factors are useful:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate; (6)
> whether the fee is fixed or contingent; (7) the time limitations imposed
> by the client or the circumstances; (8) the amount involved in the case
> and the results obtained; (9) the experience, reputation, and ability of
> the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards
> in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of*

*Elections*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson v. Ga. Highway Express, Inc.*,

488 F.2d 714, 717-19 [5th Cir. 1974]).

　　　　After carefully considering the relevant factors, the concludes that an hourly rate of $300

for the partners in this action and $180 for the associate in this action is reasonable.  In reaching

this conclusion, the Court notes that, in this case, (1) Plaintiffs' counsel spent significant time

prosecuting Plaintiffs' claims, (2) Plaintiffs' counsel obtained favorable results for Plaintiffs, (3) the in-district partner has twenty-eights years of experience, and the out-of-district partner has nineteen years of experience, and has handled five other cases involving matters arising under the PMPA in the past.[6]  The Court notes also that recent cases in Northern District cases have upheld an hourly rate for a partner of between $250 and $345.  *See, e.g.*, *Price v. New York State Bd. of Elections*, 06-CV-1083, 2009 WL 4730698, at *2-4 (N.D.N.Y. Dec. 4, 2009) (Sharpe, J.) (finding that $275 per hour for attorney's fees was reasonable); *Trudeau v. Bockstein*, 05-CV-1019, 2008 WL 3413903, at *5-6 (N.D.N.Y. Aug. 8, 2008) (Sharpe, J.) (awarding attorneys' fees at hourly rates of $345, $275, $250, and $190 for local counsel); *Overcash v. United Abstract Group, Inc.*, 549 F. Supp.2d 193, 197 (N.D.N.Y. 2008) (Sharpe, J.) (awarding attorney's fees at an hourly rate of $250 to a local attorney); *Doe v. Kaiser*, 06-CV-1045, 2007 WL 2027824, at *9-10 (Peebles, M.J.) (attorney's fee award calculated at an hourly rate of $250 based on consideration of what a reasonable client of the Syracuse, New York, community would pay and the experience of the attorney).

Turning to the issue of the reasonableness of Plaintiffs' counsel's hours, the Court finds that Plaintiffs' counsels' hours are supported by contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done.  (Dkt. No. 84, Attach. 1, 2.)  Nonetheless, the Court finds that it is appropriate to reduce the total hours billed by thirty percent for six reasons.[7]

---

[6]       (Dkt. No. 84, Attach. 1, at 18.)

[7]       *See Dotson v. City of Syracuse*, 2011 WL 817499, at *27 (quoting *Olsen v. County of Nassau*, 05-CV-3623, 2010 WL 376642, at *5 [E.D.N.Y. Jan. 26, 2010] [noting that, in lieu of making adjustments for each "excessive, redundant or otherwise unnecessary" entry, the court may instead apply "an across-the-board percentage cuts in the number of hours claimed"]); *see also Kauffman v. Maxim Healthcare Serv., Inc.*, 04-CV-2869, 2008 WL 4223616, at *13 (E.D.N.Y. Sept. 9, 2008) (reducing hours by thirty percent due to "excessive,

First, the Court finds that some of the hours worked are somewhat excessive.  For example, Plaintiffs' out-of-district counsel logged the following hours: (1) 11.4 hours for meeting with franchisees in Albany, New York, regarding potential claims; (2) 1.6 hours for a letter to the Court seeking an extension of an imposed stay; (3) 2.4 hours for preparing for a status conference with the Court and Defendant, and participating in the conference; (4) 0.7 hours for call to Court to schedule oral argument on summary judgment; and (5) 1.1 hours to prepare a word processor version of summary judgment facts and provide that version to the Court.

Second, the Court finds that some of Plaintiffs' counsel's submissions are somewhat vague.  For example, Plaintiffs' out-of-district counsel logged the following hours: (1) 3.6 hours for researching "issues related to expert report"; (2) 11.7 hours for "review[ing] documents produced by Lehigh[, and] creat[ing] inventory"; (3) 2.8 hours for "review[ing] Brownson documents"; (4) 2.5 hours for "working on attorney time[,] review[ing] timeslip entries[, and] edit[ing] brief" and (5) 17 hours for "legal research[, and] review [of] expert report."  Based on this language alone, the Court cannot determine whether the time expended is reasonable.  *See Dailey v. Societe Generale*, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996) (finding that "entries listed simply as 'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific"), *aff'd in relevant part*, 108 F.2d 451 (2d Cir. 1991).

---

duplicative, redundant and otherwise unnecessary hours"); *O'Grady v. Mohawk Finishing Prods., Inc.*, 96-CV-1945, 1999 WL 30988, at *5 (N.D.N.Y. Jan. 15, 1999) (Scullin, J.) (deeming the 1900 hours requested in the plaintiff's fee application to be "highly unreasonable" and reducing the total hours by 40 percent after first excluding from the lodestar several categories of unnecessary and excessive hours).

Third, the Court finds that both the in-district partner and the out-of-district partner billing for some of the same work was somewhat excessive (and/or unnecessarily duplicative).[8] For example, Plaintiffs' in-district counsel billed seven hours for meeting with Plaintiffs (as well as the out-of district counsel) in preparation for a settlement conference, and subsequently attending the settlement conference, and the out-of-district partner billed 6.2 hours for this same time. Having each practiced law for at least nineteen years, and therefore presumably attended numerous settlement conferences, there was little, if any, reason for both in-district counsel and out-of-district counsel to attend an initial settlement conference. Similarly, Plaintiffs' in-district counsel billed nine hours for preparing for mediation and traveling to Allentown, Pennsylvania, for mediation, the out-of-district partner billed 7.9 hours for the same activities, and the out-of-district associate billed 11.8 for the same activities.

Fourth, the Court finds that Plaintiffs' counsel should not have billed their full hourly rate for the performance of non-legal clerical/secretarial task, such as (1) filing a complaint, (2) arranging for service of the complaint, (3) filing a motion to proceed *pro hac vice*, (4) drafting a notice of withdrawal of a jury demand, and (5) preparing a word processor version of summary judgment facts and providing it to the Court. *See O'Grady v. Mohawk Finishing Prods., Inc.*, 96-CV-1945, 1999 WL 30988, at *6 (N.D.N.Y. Jan. 15, 1999) (Scullin, J.) (permiting recovery of these items, but setting the hourly rate for attorneys performing non-legal tasks at the prevailing rate for paralegals and law clerks). Rather, the Court finds reasonable an hourly rate of $120 for all non-legal work performed by an attorney.

---

[8]     *See Kauffman*, 2008 WL 4223616, at *11 (recognizing that a court must "balance promoting the use of 'billing judgment' . . . with the practice of allowing two (or more) attorneys work on one matter. . . [,]" but finding that, "where plaintiff's attorneys were both, by their own description, highly experienced litigators and able to handle discrete elements of the case with large degrees of autonomy[,]" it was excessive for both attorneys to bill for much of the same work).

Fifth, and similarly, the Court finds that Plaintiffs' counsel should not have sought

reimbursement at counsel's hourly rate for time spent traveling.  Instead, "[c]onsistent with

Northern District precedent, . . . reimbursement for travel time [should have been billed] at . . .

one-half of counsel's hourly rate."  *Dotson v. City of Syracuse*, 04-CV-1388, 2011 WL 817499,

at *27 (N.D.N.Y. Mar. 2, 2011) (Mordue, C.J.).

Finally, based on the Court's familiarity with this case, the issues presented, and the

Court's experience with the practice of law, the Court finds that billing 1,712.5 hours (not

including non-legal/secretarial work) for the work performed in this case is excessive.[9]

For each of these reasons, the Court finds that it was reasonable for Plaintiffs' counsel to

bill a total of 611 hours for work performed by a partner,[10] and 589 hours for work performed by

an associate.[11]  As a result, Plaintiffs are entitled to $289,320.00 in attorney's fees.[12]

The Court would add only two points.  First, while it is "within a district court's

discretion . . . to exclude attorney's fees amounts which are attributable to time spent on

---

[9]      The Court notes that, when determining "whether the number of hours spent by
Plaintiff[]s['] counsel were reasonable, the Court must 'use [its] experience with the case, as well
as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in
a given case.'"  *Guardado v. Precision Fin'l, Inc*., 04-CV-3309, 2008 WL 822105, at *7
(E.D.N.Y. Mar. 25, 2008) (quoting *Fox Indus., Inc. v. Gurovich*, 03-CV-5166, 2005 WL
2305002, at *2 (E.D.N.Y. Sept. 21, 2005).

[10]      The Court calculates this number as follows: Plaintiffs state in their memorandum
of law in support of their motion for attorney's fees that the in-district partner worked a total of
177.55 hours on this case, and the out-of-district partner worked a total of 695 hours on this case;
177.55 plus 695 equals 872.55; 872.55 multiplied by 0.30 equals 261.765; and 872.55 minus
261.765 equals 610.785.

[11]      Plaintiffs state in their memorandum of law in support of their motion for
attorney's fees that the associate worked a total of 841.95 hours on this case; 841.95 multiplied
by 0.30 equals 252.585; and 841.95 minus 252.585 equals 589.365.

[12]      The Court calculates this number as follows: 611 multiplied by $300 equals
$183,300; 589 multiplied by $180 equals $106,020; and $183,300 plus $106,020 equals
$289,320.00.

unsuccessful claims that are not inextricably intertwined with the successful claims[,]"[13] the

Court finds that Plaintiffs' PMPA claims were inextricably intertwined.  Second, the Court has

not found, and Defendant did not provide the Court with, any cases that stand for the proposition

that counsel's failure to provide the Court with its contingency fee retainer agreement renders

Plaintiffs' request for fees without cause.  For these two reasons, the Court declines to further

reduce Plaintiffs' attorneys' fees.

### 2.        Paralegal Fees

As part of their request for attorney's fees, Plaintiffs seek paralegal fees because they

prevailed on their inadequate-notice claim under the PMPA.  Because Plaintiffs prevailed on one

of their PMPA claims, they are entitled to paralegal fees.  The Court finds that a reasonable

hourly rate for paralegal work in this district is $80.[14]  The Court further finds that certain of the

paralegal hours billed are excessive.  More specifically, the Court finds the following hours

billed to be excessive: (1) one hour for filing a Notice of Appearance; (2) 0.5 hours for sending a

fax with a cover sheet; (3) 0.5 hours for pulling "two cases from PACER"; and (4) 3 hours for

preparing courtesy copies of motion papers and the complaint for the Court.  The Court further

finds that certain of the hours billed are vague.  For example, the paralegals billed hours for the

following: (1) 2 hours for "lehigh time"; (2) 0.5 hours for "MTLW expenses and time"; and (3)

0.75 hours for "updat[ing]/add[ing] all expenses - chart."  In addition, it would appear that

billing a client for "[h]andl[ing] payment of biennial fees" is both vague and inappropriate.

---

[13]        *O'Grady v. Mohawk Finishing Prods., Inc*., 96-CV-1945, 1999 WL 30988, at *5
(N.D.N.Y. Jan. 15, 1999) (Scullin, J.).

[14]        *See, e.g., Van Echaute v. Law Office of Thomas Landis, Esq*., 09-CV-1071 , 2011
WL 1302195, at *4 (N.D.N.Y. Mar. 31, 2011) (Mordue, C.J.) ("The paralegals referenced in
plaintiff's billing records will be billed at $80 per hour in accordance with the Northern District
of New York's lodestar figure.").

For these reasons, the Court reduces by twenty percent the total paralegal hours billed.[15]
As a result, Plaintiffs are entitled to $9,763.84 in fees for paralegal hours.[16]

### 3. Expert Fees

As stated above in Parts I.B.1. and I.B.2. of this Decision and Order, Plaintiffs seek
experts fees because they prevailed on their inadequate notice claim under the PMPA.  More
specifically, Plaintiffs seek $21,622.93 for Jeffrey Bernard's expert opinion, rendered at various
stages throughout this litigation, including at the damages hearing held on September 14, 2010.
The billing submissions from Mr. Bernard indicate that his hourly rate was $225, except during
his testimony at the hearing, where his hourly rate was $350.00.  Defendant has not presented
any argument with regard to the reasonableness of this requested amount.  As a result, the Court
finds that the requested amount of $21,622.93 is reasonable.

### 4. Costs

As stated above in Parts I.B.1. and I.B.2. of this Decision and Order, Plaintiffs seek costs
because they prevailed on their inadequate-notice claim under the PMPA.  Among the costs that
Plaintiffs seek are the following: (1) reimbursement for numerous lavish dinners (including a
"strategy" dinner at a steakhouse during which two $150 bottles of wine were ordered); (2)
reimbursement for use of Lexis-Nexis (when the attorney's time spent using Lexis-Nexis has
already been recovered); and (3) reimbursement for travel expenses for two attorneys on
occasions when it was not clearly necessary for both attorneys to travel and attend a meeting.

---

[15]     Plaintiffs' out-of-district counsel's billing report indicates that his paralegals
worked a total of 152.56 hours on this case.  Plaintiffs' in-district counsel's billing report
indicates that his paralegals worked a total of 3 hours on this case.  However, because in-district
counsel did not provide any evidence demonstrating the work that the paralegal(s) performed,
the Court declines to award anything for these 3 hours.

[16]     The Court calculates this amount as follows: 152.56 multiplied by 0.20 equals
30.512; 152.56 minus 30.512 equals 137.304; and 122.048 multiplied by $80 equals $9,763.84.

Under the circumstances, Plaintiffs are not entitled to a substantial percentage of these costs. *See Lucky Brand Dungarees. Inc. v. Ally Apparel Res*., LLC, 05-CV-6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 20, 2009) ("[M]eals that are not required by out-of-town travel are not compensable."); *Motorola, Inc. v. Abeckaser*, 07-CV-3963, 2009 WL 2568529, at *4-5 (E.D.N.Y. Aug. 5, 2009) (denying travel costs for Chicago counsel to come to New York since plaintiff had local counsel and citing cases); *O'Grady*, 1999 WL 30988, at *7 ("Expenses incurred as a result of performing research on Westlaw [or Lexis] are not recoverable because it is seen as a surrogate for the attorney's time, and such time has already been recovered.").

After carefully considering the matter, instead of embarking on the tedious task of itemizing, and accepting or rejecting, Plaintiffs' counsels' costs, the Court reduces Plaintiffs' request for costs by twenty percent. *See, e.g., Dotson*, 2011 WL 817499, at *33 (reducing the costs by the same percentage as the fee award); *Rotella v. Bd. of Educ. of City of New York*, 01-CV-0434, 2002 WL 59106, at *5 (E.D.N.Y. Jan.17, 2002) (reducing copying, courier, telephone and postage costs by 50 percent for "vagueness and lack of documentation").

As a result, Plaintiffs are entitled to recover $12,982.63 in costs.[17]

## C.    Plaintiffs' Unopposed Motion for Pre- and Post-Judgment Interest

As stated above in Part I.B.3., Plaintiffs request pre- and post-judgment interest, and Lehigh has not opposed that request. With regard to Plaintiff Brownson's motion, the Court finds, for the reasons stated above in Part III.A.4. of this Decision and Order, that Plaintiff Brownson's liability on Lehigh's breach-of-contract counterclaim exceeds Lehigh's liability on Plaintiff Brownson's PMPA claim, and that Lehigh's damages for Plaintiff Brownson's breach

---

[17]    In Plaintiffs' counsel's affidavit in support of Plaintiffs' motion for costs, Plaintiffs' counsel requests costs in the amount of $16,228.29. $16,228.29 multiplied by 0.20 equals $3,245.66; and $16,228.29 minus $3,245.66 equals $12,982.63.

occurred, at the very latest, when Lehigh terminated the franchise relationship with the New Baltimore Stations.  As a result, Plaintiff Brownson's motion for pre- and post-judgment interest on its damages award is denied.

With regard to Plaintiff Jimico's motion, after carefully considering the unopposed motion, the Court is satisfied that Plaintiff Jimico has met its modest threshold burden of establishing entitlement to pre- and post-judgment interest on its PMPA claim, under the circumstances.[18]  The Court would add only that Plaintiff's motion would survive even the heightened scrutiny appropriate on a contested motion for the reasons stated in the memorandum of law filed by Plaintiffs.  As a result, Plaintiff Jimico is awarded prejudgment and post-judgment interest.

Before discussing the appropriate interest rates, the Court notes that there are several possibilities for an accrual date of pre-judgment interest in this case.  "The first is the date of injury or deprivation."  *Cayuga Indian Nation of New York v. Pataki*, 80-CV-0930, 1999 WL 224615, at *23 (N.D.N.Y. Apr. 15, 1999) (McCurn).  "A second possible accrual date is 'the earliest ascertainable date the cause of action existed [.]'"  *Cayuga Indian Nation of New York*, 1999 WL 224615, at *23 (citing N.Y. CPLR § 5001[b] [McKinney Supp.1998]).  "Third, where it is difficult to ascertain the exact date for accrual of prejudgment interest, 'the date the action was commenced' will serve as the accrual date."  *Id.* (quoting *In re Crazy Eddie Securities Litig.*, 948 F. Supp. 1154 [E.D.N.Y. 1996]).  As was the court in *Cayuga Indian Nation of New York*,

---

[18]     In this District, a movant's burden with regard to an unopposed motion is lightened such that, in order to succeed, the movant need only show its entitlement to the relief requested in its motion, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases).

this Court "is fully cognizant that the latter two accrual dates are based upon New York law, and not federal law." *Id*.  "In exercising its broad discretion, however, and taking into account the paucity of federal case law discussing how interest accrual dates should be determined, the court may look to state law for guidance on this discrete issue." *Id*.

After carefully considering these options, and keeping in mind that Lehigh has not objected to Plaintiffs' argument that the appropriate accrual date is the date that the injury occurred, the Court finds that, under the circumstances, the appropriate accrual date for awarding pre-judgment interest is the date that Lehigh terminated its franchise relationship without providing adequate notice under the PMPA.

Turning to the appropriate rate, again, the Court has broad discretion in setting the rate. *Cayuga Indian Nation of New York*, 1999 WL 224615, at *24.  However, because Lehigh has not objected to Plaintiffs' request for pre-judgment interest compounded at an annual rate of nine percent, and because courts within this Circuit have adopted this rate,[19] the Court finds that this interest rate is appropriate.

Having said that, the Court also finds that Plaintiffs are not entitled to pre-judgment interest on any portion of their punitive damages award.  *Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 169 F.3d 110, 115-16 (2d Cir. 1999) ("In general, courts have been concerned that prejudgment interest not be awarded . . . where punitive damages are at issue, lest a double penalty be inflicted or the maximum penalty be exceeded"); *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp.2d 395, 403 n.3 (E.D.N.Y. 2010) (declining to award pre-judgment interest on punitive damages award); *Cioffi v. New York Cmty. Bank*, 465 F. Supp.2d 202, 223 (E.D.N.Y. 2006) ("Since punitive damages are not intended to provide full compensation to plaintiff, there

---

[19]         *See, e.g., GTFM, Inc. v. Solid Clothing, Inc.*, 01-CV-2629, 2002 WL 31886349, at *3-4 (S.D.N.Y. Dec. 26, 2002) (applying nine percent rate for violation of Lanham Act).

is no basis for applying pre-judgment interest to the punitive damage award in this case."). As a result, Plaintiff Jimico is entitled to interest on its compensatory damages award of $100,461.38 (which is the sum of Plaintiff Jimico's award of $58,609.50 for the Angola Station plus $41,851.88 for the Seneca Station).[20]

Accordingly, interest on Plaintiff Jimico's award of $100,461.38 is compounded annually at a rate of nine percent, with the accrual beginning as follows: (1) for the Angola Station owned by Plaintiff Jimico, to begin on July 28, 2006 (i.e., the day Defendant terminated the franchise relationship with that station without providing adequate notice); and (2) for the Seneca Station owned by Plaintiff Jimico, to begin on April 1, 2007 (i.e., the day Defendant terminated the franchise relationship with that station without providing adequate notice). Because the accrual ends on the date of entry of final judgment, i.e., September 30, 2011,[21] Plaintiff Jimico is entitled to $92,175.40 in pre-judgment interest for the Angola Station,[22] and $61,735.83 in pre-judgment

---

[20]     (Dkt. No. 82.) More specifically, the Court calculates this award of $100,461.38 as follows: Plaintiff Jimico was awarded $41,977.00 in lost income at the Angola Station, plus $16,632.50 in lost profits regarding a sale of the Angola Station, equaling a total of $58,609.50; Plaintiff Jimico was awarded $20,583.00 in lost income at the Seneca Station, plus $21,268.88 in lost profits regarding a sale of the Seneca Station, equaling a total of $41,851.88; and $58,609.50 plus $41,851.88 equals $100,461.38.

[21]     *See Osterneck v. Ernst & Whinney*, 109 S.Ct. 987, 991-92 (1989) (noting that an award of pre-judgment interest is part of the merits, and therefore a judgment is not final until after an award of prejudgment interest is decided); *cf. In re Palermo*, 08-CV-7421, 2011 WL 446209, at *4 (S.D.N.Y. Feb. 7, 2011) ("A judgment is final such that it may be appealed if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" [quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)]).

[22]     As stated above in note 20 of this Decision and Order, the compensatory damages award for the Angola Station was $58,609.50. Based on a compounding annual interest rate of nine percent, which began to accrue on July 28, 2006, Plaintiff Jimico's accrued interest for the Angola Station breaks down as follows: (1) $58,609.50 multiplied by 0.09 equals $5,274.86; $58,609.50 plus $5,274.86 equals $64,334.36 (owed on July 28, 2007); (2) $64,334.36 multiplied by 0.09 equals $5,790.09; $64,334.36 plus $5,790.09 equals $70,124.45 (owed on July 28, 2008); (3) $70,124.45 multiplied by 0.09 equals $6,311.20; $70,124.45 plus $6,311.20 equals $76,435.65 (owed on July 28, 2009); (4) $76,435.65 multiplied by 0.09 equals $6,879.21; $76,435.65 plus $6,879.21 equals $83,314.86 (owed on July 28, 2010); (5) $83,314.86

29

interest for the Seneca Station,[23] for a total of $153,911.23 in pre-judgment interest.[24]

Plaintiff Jimico is also awarded post-judgment interest at the rate of 0.10%, accruing

from the date of this Decision and Order (i.e., the date that final judgment is entered) until the

date on which Plaintiff Jimico is paid by Lehigh.[25]

**D.**     **Plaintiffs' Motion for Entry of Final Judgment and Lehigh's Motion for a Stay of Entry of Final Judgment**

On November 20, 2010, Lehigh filed a notice of interlocutory appeal from the Court's

Decision and Order of October 14, 2010.  (Dkt. No. 96.)  On December 20, 2010, Plaintiffs filed

a motion for entry of judgment pursuant to Fed. R. Civ. P. 54(b), arguing essentially that,

---

multiplied by 0.09 equals $7,498.34; $83,314.86 plus $7,498.34 equals $90,813.20 (owed on July 28, 2011); and (6) $90,813.20 multiplied by 0.09 equals $8,173.19; $8,173.19 divided by 6 equals $1,362.20 (owed for the two months between July 28, 2011 and September 30, 2011); $90,813.20 plus $1,362.20 equals $92,175.40.

[23]     As stated above in note 20 of this Decision and Order, the compensatory damages award for the Seneca Station was $41,851.88.  Based on a compounding annual interest rate of nine percent, which began to accrue on April 1, 2007, Plaintiff Jimico's accrued interest for the Seneca Station breaks down as follows: (1) $41,851.88 multiplied by 0.09 equals $3,766.67; $41,851.88 plus $3,766.67 equals $45,618.55 (owed on April 1, 2008); (2) $45,618.55 multiplied by 0.09 equals $4,105.67; $45,618.55 plus $4,105.67 equals $49,724.22 (owed on April 1, 2009); (3) $49,724.22 multiplied by 0.09 equals $4,475.18; $49,724.22 plus $4,475.18 equals $54,199.40 (owed on April 1, 2010); (4) $54,199.40 multiplied by 0.09 equals $4,877.95; $54,199.40 plus $4,877.95 equals $59,077.35 (owed on April 1, 2011); and (5) $59,077.35 multiplied by 0.09 equals $5,316.96; $5,316.96 divided by 2 equals $2,658.48 (owed for the six months between April 1, 2011 and September 30, 2011); $59,077.35 plus $2,658.48 equals $61,735.83.

[24]     The Court calculates this amount as follows: $92,175.40 plus $61,735.83 equals $153,911.23.

[25]     The calculation of post-judgment interest is governed by 28 U.S.C. § 1961, which states, in pertinent part, that "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  In this case, the date of the entry of the judgment is September 30, 2011.  For the calendar week preceding the date of judgment, i.e., the week ending September 23, 2011, the weekly average 1-year constant maturity Treasury yield was 0.10%.  *See* http://www.federalreserve.gov/releases/h15/current/ (last visited Sept. 29, 2011).

although Lehigh's counterclaim remained in the action, a final judgment should be entered for

Plaintiffs on their PMPA claims, which had been "finally decided." (Dkt. No. 104.) On

December 30, 2010, Lehigh filed a cross-motion to stay entry of a final judgment based on it

having filed an appeal from the Court's Decision and Order of October 14, 2010. (Dkt. No. 105,

Attach. 2.) On March 7, 2011, the Second Circuit issued a Mandate indicating that Lehigh's

appeal had been withdrawn. (Dkt. No. 109.)

     As an initial matter, because this Decision and Order disposes of Lehigh's counterclaim

(and is a final judgment), Plaintiffs' motion that judgment be entered separately on its claims,

and Lehigh's cross-motion to stay entry of a final judgment on Plaintiffs' claims, are denied as

moot. Moreover, because Lehigh withdrew its appeal to the Second Circuit, its cross-motion to

stay entry of a final judgment on Plaintiffs' claims is denied, in the alternative, as premature

and/or procedurally improper (because no appeal has been taken and/or no notice of appeal has

been filed).

     **ACCORDINGLY**, it is

     **ORDERED** that Lehigh's motion for summary judgment on its counterclaims (Dkt. No.

114) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part** in the following respects:

     (1) Lehigh's counterclaim for breach-of-contract against Plaintiff Brownson and

     Peter Brownson as the guarantor is **<u>GRANTED</u>** and Lehigh is awarded

     $84,889.72. In its Decision and Order of October 14, 2010, the Court awarded

     Plaintiff Brownson a total of $51,431.38 ($19,123.00 in lost income at the New

     Baltimore Station, plus $22,308.38 in lost profits regarding a sale of the New

     Baltimore Station, plus $10,000.00 in punitive damages regarding the New

     Baltimore Station). The remaining balance owed by Plaintiff Brownson due to

     Lehigh is $33,458.34.

(2) Lehigh's counterclaim for unjust enrichment is **<u>DENIED</u>**; and

(3) Lehigh's request for attorney's fees, pursuant to the TFA, is **<u>GRANTED</u>**; and

it is further

**ORDERED** that Plaintiffs' motion for attorney's fees, paralegal fees, and expert fees

(Dkt. No. 84) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part** in that Plaintiffs are awarded a total

of $289,320.00 in attorney's fees, $9,763.84 in paralegal fees, and $21,622.93 in expert fees; and

it is further

**ORDERED** that Plaintiffs' motion for costs (Dkt. No. 85) is **<u>GRANTED</u> in part** and

**<u>DENIED</u> in part** in that Plaintiffs are awarded a total of $12,982.63 in costs; and it is further

**ORDERED** that Plaintiffs' motion for pre- and post-judgment interest (Dkt. No. 97) is

**<u>GRANTED</u> in part** and **<u>DENIED</u> in part** in the following respects:

(1) Plaintiff Brownson's motion for pre- and post-judgment interest is **<u>DENIED</u>**;

(2) Plaintiff Jimico's motion for pre-judgment interest is **<u>GRANTED</u> in part** and

**<u>DENIED</u> in part** in that Plaintiff Jimico is awarded $153,911.23 in pre-judgment

interest; and

(3) Plaintiff Jimico's motion for post-judgment interest is **<u>GRANTED</u>** at the rate

of 0.10%, accruing from the date of this Decision and Order; and it is further

**ORDERED** that Plaintiffs' motion for entry of final judgment prior to the conclusion of

this case, pursuant to Fed. R. Civ. P. 54(b) (Dkt. No. 104) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Lehigh's motion for a stay of entry of final judgment, pursuant to Fed.

R. Civ. P. 62(d) (Dkt. No. 105) is **<u>DENIED</u>** as moot, premature and procedurally improper.

Dated: September 30, 2011
      Syracuse, NY

Hon. Glenn T. Suddaby
U.S. District Judge